# EXHIBIT "A"

AUDWIN F. LEVASSEUR, ESQ.
HARBATKIN & LEVASSEUR, P.A.
616 E. PALISADE AVENUE
SUITE 102
ENGLEWOOD CLIFFS, 07632
(201) 608-5192
Attorneys for Plaintiff

---

MALCOLM WILEY

        Plaintiff,

    v.

NEWARK POLICE DEPARTMENT
CITY OF NEWARK
ESSEX COUNTY
ESSEX COUNTY SHERIFF OFFICE
NEWARK POLICE DEPARMENT
OFFICERS JOHN DOES 1-50

        Defendant.

---

UNITED SATES DISTRICT COURT
DISTRICT OF NEW JERSEY

COMPLAINT and JURY DEMAND

CASE NO.

## COMPLAINT

    Plaintiff, MALCOLM WILEY, by and through his attorneys, the Law Offices of Harbatkin & Levasseur, P.A. hereby complains against Defendants and requests trial by jury as follows:

### JURISDICTION AND VENUE

    1.    This Court has jurisdiction pursuant to 28 U.S.C. § 1343, to redress violations of civil rights guaranteed by the Constitution of the United States, for which redress is available under 42 U.S.C. §§ 1983 & 1988, and the Fourth and Fourteenth Amendment to the United States Constitution.

    2.    The Court has jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1331 and § 1343 in that this is an action to redress violations of Plaintiff's federally protected Constitutional rights. Jurisdiction over the state law claims is founded upon the

1

supplemental jurisdiction of this Court, 28 U.S.C. § 1367.

3.     Plaintiff, Malcolm Wiley, is and was a legal resident in the United States, and a resident of the City of Newark, New Jersey.

4.     Essex County was at all times mentioned herein, and is, a County government organized and chartered under the laws of New Jersey. At all times mentioned herein, the remaining Defendants acted as employees of ESSEX COUNTY and acted within their scope of their employment.

5.     Defendant the Newark Police Department is a police force headquartered at 480 Clinton Avenue Newark, NJ 07102.

6.     Defendant Essex County Sheriff is headquartered at 50 W. Market St. Newark NJ 07102.

7.     Defendant Individual Police Officers "JOHN DOES 1-50, whose names are presently unknown to Plaintiff, participated in the injury imposed upon Plaintiff.

8.     The acts and practices constituting the violations alleged below have all occurred within the State of New Jersey, which is properly within the jurisdiction of the United States District in and for the District of New Jersey.

9.     Venue in the District of New Jersey, Newark Division, is proper because the incident which is the subject of this lawsuit occurred in the State of New Jersey and Defendants are located in this venue. See 28 U.S.C. § 1391(b)(1) and § 1391(b)(2).

10.     Plaintiff has complied with all conditions precedent to the filing of this lawsuit pursuant to Title 59, New Jersey Statutes; all applicable notices have been provided to Defendants.

11.     Plaintiff has retained The Law Offices of Harbatkin & Levasseur P.A. to represent his interests in prosecuting this action and said law firm is entitled to their reasonable attorneys' fees an costs incurred in connection therewith.

## FACTUAL ALLEGATIONS

11.     At all times material hereto, the subject incident arises out of the brutal battery and assault of Plaintiff resulting in serious personal injuries to said Plaintiff which occurred in or about 207 N. 9th Street Newark NJ.

12.     Specifically on May 6, 2014, Plaintiff was struck and ran over by a John Does Defendants after allegedly failing to yield to officers conducting an investigatory stop. Defendant Officers who were employed and working under color of law for the Newark Police Department.   The Defendant Officers were operating a marked Newark Police Department Police car at the time they struck and ran over Plaintiff.

13.     As a result of Defendant Police Officers' actions, Plaintiff suffered a broken leg, and injuries to his hip, thighs and head.

14.     On the same day Plaintiff was treated at the University of Medicine and Dentistry of New Jersey (UMDNJ) in Newark NJ.

15.     Plaintiff's injuries are permanent and remain ongoing as Plaintiff continues to suffer from plain in his leg, permanently inability to walk normally, pain in his side, headaches, fear, depression, extraordinary fear and psychological pain and other emotional distress.

16.     As evidence of the extent of the excessive illegal use of physical force, the Plaintiff's medical reports reveal the Plaintiff's serious physical injuries.

17.     The acts of Defendants deprived Plaintiff of right to life, guaranteed by the Fourteenth Amendment due process clause, for which redress is available pursuant to 42 U.S.C. § 1983.

18.     Plaintiff is also entitled to punitive damages on all of his claims against the individual Defendants personally to redress their willfull, malicious, wanton, reckless and conduct.

**FIRST CAUSE OF ACTION**

19.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

20.  42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

21.     Plaintiff, Malcolm Wiley is a citizen of the United States and all of the individual police officer Defendants named above, or identified as "John Does 1-50" to this claim are persons for purposes of 42 U.S.C. § 1983. All individual Defendants, at all times relevant hereto, were acting under the color of state law in their capacity as police officers and their acts or omissions were conducted within the scope of their official duties or employment.

22.     At the time of the complained of events, the deceased had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unlawful search and unreasonable search and seizure through excessive force.

23.     Plaintiff possessed clearly established Constitutional rights under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

24.     Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

25.     Defendants' actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated these Fourth Amendment rights of Plaintiff.

26.     Defendants' actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected

4

rights. The force used by these Defendant officers shocks the conscience and violated these Fourteenth Amendment rights of Plaintiff. The force used constituted deadly force in that it could have caused death and did cause serious bodily injury.

27.     None of the Defendant officers took reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking excessive force of other Defendant officers or from the excessive force of later responding officers despite being in a position to do so. They are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other officer.

28.     Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

29.     Defendants did so with shocking and willful indifference to Plaintiff rights and their conscious awareness that they would cause Plaintiff's death. The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

30.     These individual Defendants acted in concert and joint action with each other.

31.     The acts or omissions of Defendants as described herein intentionally deprived Plaintiff's of his constitutional rights and caused him his life.

32.     These individual Defendants are not entitled to qualified immunity for the complained of conduct.

33.     The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff's constitutionally and federally protected rights.

34.     As a proximate result of Defendants' unlawful conduct, Plaintiff's suffered extraordinary pain and injury as described herein entitling Plaintiff to compensatory and special damages, in amounts to be determined at trial.

35.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

36.     In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 – Racial Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1981
### (Against ALL Defendants)

37.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.   .

38. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

39. Plaintiff in this action is a citizen of the United States and all of the individual police officer Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

40. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as police officers and their acts or omissions were conducted within the scope of their official duties or employment.

41. At the time of the complained of events, Plaintiff's decedent had the clearly established constitutional right to be free from racial discrimination in law enforcement by police officers and to enjoy the equal protection of the laws.

6

42. Title 42 U.S.C. § 1981("Section 1981") provides, in pertinent part:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

43. Plaintiff's, as an African American is a member of a protected class, and thus also had the clearly established statutory right under this provision of 42 U.S.C. § 1981 to be free from racially motivated beatings, arrests, searches, and the filing of false charges.

44. Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

45. Plaintiff's race was a motivating factor in the Defendants' decisions to use excessive force upon Plaintiff. Defendants' conduct was undertaken with the purpose of depriving Plaintiff's decedent of the equal protection and benefits of the law, equal privileges and immunities under the law, and due process in violation of the Fourteenth Amendment and § 1981.

46. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected rights.

47. The acts or omissions of all individual Defendants were moving forces behind Plaintiff decedent's injuries and loss of life.

48. These individual Defendants acted in concert and joint action with each other.

49. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff's decedent of his constitutional and statutory rights and caused him other damages.

50. Defendants are not entitled to qualified immunity for the complained of conduct.

51. The Defendants to this claim at all times relevant hereto were acting pursuant to

municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or

practice in their actions pertaining to Plaintiff.

52.     As a proximate result of Defendants' unlawful conduct, Plaintiff's decedent

suffered loss of life.   Plaintiff has suffered actual physical and emotional injuries, and other

damages and losses as described herein entitling her to compensatory and special damages, in

amounts to be determined at trial.

53.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C.

§1988, pre-judgment interest and costs as allowable by federal law. There may also be special

damages for lien interests.

54.     In addition to compensatory, economic, consequential and special damages,

Plaintiff is entitled to punitive damages against each of the individually named Defendants

under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been

taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and

statutory rights of Plaintiff.

## THIRD CAUSE OF ACTION
**Violation of 42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices,
Customs, Training, and Supervision in violation of the Fourth, Fourteenth,
and First Amendments and in violation of 42 U.S.C. § 1981**
(NEWARK POLICE DEPARTMENT, ESSEX COUNTY SHERIFF
DEPARTMENT, ESSEX COUNTY)

55.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully

set

56.     42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom
> or usage of any state or territory or the District of Columbia subjects or
> causes to be subjected any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights, privileges or
> immunities secured by the constitution and law shall be liable to the party
> injured in an action at law, suit in equity, or other appropriate proceeding
> for redress . . .

57.     Plaintiff and Plaintiff's decedent was a citizen of the United States and

Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

58.     The Defendants to this claim at all times relevant hereto were acting under the

color of state law of conduct:

> Plaintiff had the following clearly established rights at the time of the complained the right to be secure in his person from unreasonable seizure through excessive force, under the Fourth Amendment; the right to bodily integrity and to be free from excessive force by law enforcement under the Fourteenth Amendment; the right to exercise his constitutional rights of free speech under the First Amendment without retaliation; the right to be free from discrimination by police under the Equal Protection Clause of the Fourteenth Amendment and under 42 U.S.C. § 1981; and, the right to be free from malicious prosecution under the Fourth and Fourteenth Amendments.

59.     Defendants to this claim knew or should have known of these rights at the time

of the complained of conduct as they were clearly established at that time.

60.     The acts or omissions of these Defendants, as described herein, deprived

Plaintiff's decedent of his constitutional and statutory rights and caused him other damages.

61.     The acts or omissions of Defendants as described herein intentionally deprived

Plaintiff's decedent of his constitutional and statutory rights and caused him other damages.

62.     Defendants are not entitled to qualified immunity for the complained of

conduct.

63.     Defendants to this claim were, at all times relevant, policymakers for Newark

Police Department, Essex County Sheriff's office, and in that capacity established policies,

procedures, customs, and/or practices for the same.

64.     These Defendants developed and maintained policies, procedures, customs,

and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which

were moving forces behind and proximately caused the violations of Plaintiff's constitutional

and federal rights as set forth herein and in the other claims, resulted from a conscious or

deliberate choice to follow a course of action from among various available alternatives.

65.     Defendants to this claim have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers, to require them to fill out truthfully and completely reports, to refrain from excessive force, and to not obey blindly the orders of a superior officer, even when these orders are contrary rights of the accused, amounting to deliberate indifference to the constitutional rights of Plaintiff's decedent and of the public.

66.     In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

67.     The deliberately indifferent training and supervision provided by Defendants to this Claim resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to all Defendants herein and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

68.     As a direct result of Defendants' unlawful conduct, Plaintiff suffered excruciating pain, suffering and severe physical injuries. Likewise, Plaintiff has suffered actual emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial.

69.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C.

§1988, pre-judgment interest and costs as allowable by federal law. There may also be special

damages for lien interests.

70.     Finally, Plaintiff seeks appropriate declaratory and injunctive relief pursuant to

42 U.S.C. § 1983 to redress Defendants' above described ongoing deliberate indifference in

policies, practices, habits, customs, usages, training and supervision with respect to the rights

described herein, and with respect to the ongoing policy and/or practice of the Internal Affairs

Bureau of failing to investigate or appropriately handle complaints of the same, which

Defendants have no intention for voluntarily correcting despite obvious need and requests for

such correction.

## FOURTH CAUSE OF ACTION
## (AGAINST ALL DEFENDANTS)

71.     Plaintiff reiterates and re-alleges the facts stated in the preceding paragraphs as

if stated fully herein.

72.     Defendants engaged in a conspiracy to violate Plaintiff's civil rights in violation

of 42 U.S.C. §§ 1983 and 1985, denying him equal protection of the law. Defendants did so by

unlawfully conspiring to cover up the use of excessive force against Plaintiff.

85.     As a direct and proximate result of the aforementioned policy and custom of

deliberate indifference of Defendants City of Newark and Newark Police Department, and

Defendant officers committed the unlawful acts referred to above. Thus, Defendants are for

Plaintiff' s injuries.

## FIFTH CAUSE OF ACTION
## (AGAINST ALL DEFENDANTS)

86.     Plaintiff reiterates and re-alleges the facts stated in the preceding paragraphs as

if stated fully herein.

87.     Defendants failed to intervene to prevent their fellow officers from violating the civil rights of the Plaintiff, both during assault itself and in failing to make proper reports to law enforcement authorities regarding the incident.

88.     Defendant officers observing of the incident in question in all material times or had reason to know that excessive force was being used and that other constitutional violations were being committed by a law enforcement official.

89.     Defendant officers had a realistic opportunity to intervene to prevent the harm from occurring, and they failed to act.

## SIXTH CAUSE OF ACTION
## (AGAINT ALL DEFENDANTS)
### NEW JERSEY STATE CIVIL RGHTS ACTION/STATE CONSTITUTIONAL CLAIM

90.     PLAINTIFF, Malcolm Wiley, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through 89 as if set forth fully herein, and further states as follows:

91.     The illegal, unconstitutional and discriminatory acts of the Defendants constituted acts of a de facto policy to discriminate, use of unlawful force, falsely arrest and detain and illegally search and sexually assault Plaintiff.    The actions the of the Defendants aforesaid also represent a de facto policy to deny Plaintiff her right to travel, equal protection and privacy. All of these violations contravene Plaintiff's constitutional rights under the New Jersey State Constitution including, but not limited to, Article I, Section 1; Article I, Section 5 – denial of rights; and Article I, Section 7 and the New Jersey Civil Rights Act (N.J.S.A. 10:6-2).

92.     Each individual Defendant was acting at all times in further of his employer.

93.     As a result of the aforesaid conduct, Plaintiff has been damaged, including violation of her civil rights and has suffered severe, physical and emotional pain and suffering.

## PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

1. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

2. Economic losses on all claims allowed by law;

3. Special damages in an amount to be determined at trial;

4. Punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

5. Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

6. Pre- and post-judgment interest at the lawful rate; and,

7. Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

## PLAINTIFF REQUESTS A TRIAL BY JURY

Respectfully submitted this 4th day of May 2016.

Respectfully submitted,

Dated: May 4, 2016                    By: /s/Audwin F. Levasseur, Esq.
                                          HARBATKIN & LEVASSEUR
                                          Attorneys for Plaintiff

13

## DESIGNATION OF COUNSEL

TO:   ASSIGNMENT JUDGE

In accordance with <u>Rule</u> 4:25-4, you are hereby notified that Audwin F. Levasseur, Esq. is assigned to try this case.

## NOTICE OF NO OTHER ACTIONS

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated. Based upon the information currently available to me, I know of no other parties who should be joined in this action.

Dated: May 4, 2016                   By: /s/Audwin F. Levasseur _____

                                          HARBATKIN & LEVASSEUR
                                          Attorneys for Plaintiff

# EXHIBIT

# "B"

2009 WL 3028949
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Martin MULLER, Plaintiff,
v.
BRISTOL TOWNSHIP and the Bristol
Township Police Department, Defendants.

Civil Action No. 09–1086.
|
Sept. 17, 2009.

**Attorneys and Law Firms**

Ronald H. Elgart, Fairless Hills, PA, for Plaintiff.

Christine E. Munion, Law Offices William J. Ferren &
Associates, Blue Bell, PA, for Defendants.

### *MEMORANDUM*

GENE E.K. PRATTER, District Judge.

 **\*1** Martin Muller claims that Bristol Township violated
his rights under the First, Fourth, Fifth and Fourteenth
Amendments of the United States Constitution and,
hence, violated Title 42 U.S.C. §§ 1983, 1985, and 1986.[1]
The Township filed a motion to dismiss,[2] which Mr.
Muller opposes. Oral argument was held on September 1,
2009. For the reasons that follow, the Court grants the
Motion to Dismiss without prejudice to Mr. Muller to file
anew should he determine it is feasible for him to do so.

## II. STATEMENT OF ALLEGED FACTS
The harrowing scenario described by Mr. Muller is worthy
of a television drama. Mr. Muller alleges that on or about
March 20, 2007, the Bristol Township Police Department
summoned a "SWAT-type team" of officers to surround
Mr. Muller's home in Bristol Township, Bucks County,
Pennsylvania, employing automatic weapons, sniper units
and armored vehicles. Compl. at ¶¶ 5, 7. Mr. Muller's
Complaint states, "[a]llegedly, [Mr. Muller] had either
threatened to hurt himself or others at some earlier time."
*Id.* at ¶ 6. Meanwhile, telephone contacts were established
at various times between Mr. Muller and the Bristol

Township Police Department, during which Mr. Muller
denied that he had threatened to hurt himself or others,
and denied that he was present at his home. *Id.* at ¶¶ 8–9.

Nevertheless, Mr. Muller alleges, the officers[3] vandalized
two motor vehicles and two motorcycles owned by
Mr. Muller, by cutting tire stems and wires. *Id.* at
¶ 10. Then, after more than six hours had passed,
the officers fired numerous noxious gas canisters into
Mr. Muller's residence, destroying windows, damaging
household contents and putting holes into interior walls.
*Id.* at ¶ 11. The release of this gas contaminated the entire
household. *Id.* at ¶ 12. Subsequently, the officers forcibly
entered Mr. Muller's home, causing further damage to the
home. *Id* . at ¶ 13. During this time, Mr. Muller's dog
escaped the gas-filled residence and was hit and killed by
a passing car. *Id.* at ¶ 14.

After the officers thoroughly searched Mr. Muller's
residence, they apparently concluded that Mr. Muller
indeed was not present at his house during the "siege."
*Id.* at ¶ 15. Later, Mr. Muller appeared at the Bristol
Township Police Department, where he was questioned.
*Id.* at ¶ 16. He was taken to Lower Bucks Hospital for drug
testing and a psychological/psychiatric evaluation. *Id.* at
¶ 16. No drugs were detected, and Mr. Muller's behavior
was normal. *Id.* at ¶ 16. Mr. Muller was released, and
Lower Bucks Hospital billed him $2,376 for its services.
*Id.* at ¶¶ 17–18.

On March 21, 2007, criminal charges were filed against
Mr. Muller, alleging Terroristic Threats and Harassment.
*Id.* at ¶ 19.[4] At all relevant times, according to Mr. Muller,
the Police Department was aware that the complaining
witness was unreliable and lacked credibility. *Id.* at ¶ 20.
Mr. Muller surrendered to the court system[5] and was
released on bail, but his probation officer detained him
because of the pending charges. *Id.* at ¶¶ 21–22. Mr. Muller
remained detained at the Bucks County Correctional
Facility for approximately seven days. *Id.* at ¶ 23.

## II. STANDARD OF REVIEW
 **\*2** A Rule 12(b)(6) motion to dismiss tests the sufficiency
of a complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46,
78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although Rule 8 of
the Federal Rules of Civil Procedure requires only "a
short and plain statement of the claim showing that the
pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), in order

to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (quoting *Conley,* 355 U.S. at 47), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). Specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* at 1965 (citations omitted). To survive a motion to dismiss, a civil complaint must allege "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (confirming that *Twombly* applies to all civil cases). [6]

The Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Twombly,* 127 S.Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). The Court, however, "need not accept as true 'unsupported conclusions and unwarranted inferences,' " *Doug Grant, Inc. v. Greate Bay Casino Corp.,* 232 F.3d 173, 183–84 (3d Cir.2000) (citing *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 263 n. 13 (3d Cir.1998)), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997).

The Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rts.,* 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007); *Ieradi v. Mylan Labs., Inc.,* 230 F.3d 594, 600 n. 3 (3d Cir.2000) ("Under Federal Rule of Evidence 201, we may take judicial notice at any stage of the proceeding of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned."); *Pension Benefit Guaranty Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

## IV. DISCUSSION

### A. Mr. Muller's § 1983 Claim

*3 Municipalities cannot be held vicariously liable pursuant to 42 U.S.C. § 1983 because under this statute there is no respondeat superior liability for the actions of municipal agents. *Sanford v. Stiles,* 456 F.3d 298, 314 (3d Cir.2006) (citing *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The Third Circuit Court of Appeals recently stated that, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York,* 564 F.3d 636, 657 (3d Cir.2009) (internal citations omitted). *See Leatherman v. Tarrant County,* 507 U.S. 163, 166–67, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (noting that while there is no "heightened pleading standard" for a § 1983 claim involving municipal liability, "a [municipality] cannot be held liable unless a municipal policy or custom caused the constitutional injury."). *See also Sanford,* 456 F.3d at 314 (upholding district court's grant of summary judgment on municipal liability claim because plaintiff did not present evidence to show that injuries were caused by a policy or custom of the defendant school district); *Berg v. County of Allegheny,* 219 F.3d 261, 275–76 (3d Cir.2000) (reversing district court's grant of summary judgment on municipal liability claim because there were issues of fact as to whether plaintiff's injuries were caused by a policy or custom of the police department).

The Third Circuit Court of Appeals provided further guidance on the "policy or custom" requirement:

> A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanently and well-settled" as to virtually constitute law.

*McTernan,* 564 F.3d at 658 (quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir.1990) (internal

Case 2:16-cv-02530-KM-MAH Document 5-3 Filed 07/22/16 Page 19 of 31 PageID: 57
Muller v. Bristol Tp., Not Reported in F.Supp.2d (2009)
2009 WL 3028949


citations omitted). *See also Jiminez v. All American Rathskeller,* 503 F.3d 247, 250 (3d Cir.2007); *Berg,* 219 F.3d at 275–76. "Custom requires proof of knowledge and acquiescence by the decisionmaker." *McTernan,* 564 F.3d at 658 (internal citations omitted). Federal Rule of Civil Procedure 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief" that rises "above the speculative level." *Id.* (quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 231–32 (3d Cir.2008) (quoting *Twombly,* 127 S.Ct. at 1965 & n. 3)). "Rule 8(a)(2) requires that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' " *Id.* at 658 ((quoting *Phillips,* 515 F.3d at 231) (quoting *Twombly,* 127 S.Ct. at 1966)).

**\*4** Here, Defendants argue that Mr. Muller's complaint does not allege a municipal policy or custom sufficient to support a *Monell* claim. Defs.' Br. in Supp. of Mot. to Dismiss at 6. Indeed, the only mention of a municipal policy or custom in the Complaint is in Paragraph 4, where Mr. Muller alleges that

> [a]t all times relevant hereto, the actions described were supervised, controlled and ordered by members of the Bristol Township Police Department acting under the color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the Commonwealth of Pennsylvania, County of Bucks and/or Bristol Township.

Compl. at ¶ 4. This is little more than a recitation of § 1983 itself, and a "[f]ormulaic recitation of the elements of a cause of action will not do." *McTernan,* 564 F.3d at 659 (quoting *Phillips,* 515 F.3d at 231 (quoting *Twombly,* 127 S.Ct. at 1964–65)). This is the only time that the words "policies" and "customs" are used in the Complaint, and nowhere does Mr. Muller specify, describe or even allude to the relevant "policies" and "customs" of which he complains.

To satisfy the basic pleading standard, Mr. Muller must identify the relevant customs or policies, and specify what they were. *McTernan,* 564 F.3d at 658 (internal citations omitted). Although Mr. Muller's other factual allegations may give notice as to the alleged wrongdoing of the individual police officers, they do not give notice as to the

alleged policy or custom of the municipality at issue. *See McTernan,* 564 F.3d at 657–59 (upholding district court's dismissal of claims because plaintiff's allegation that his rights were violated "due to the City's policy of ignoring First Amendment right[s.]" was not sufficient to allege a *Monell* claim); *Amaro v. Montgomery County,* No. 06–3131, 2008 U.S. Dist. LEXIS 67993, *12, n. 5, 2008 WL 4148610 (E.D. Pa. Sept 9, 2008) (dismissing § 1983 *Monell* claim because plaintiff did not plead the existence of a custom or policy that caused plaintiff's injuries).

To the extent that Mr. Muller addresses the Township's "policy or custom" argument, he does so in the following passage, which also addresses the Township's argument that Mr. Muller did not allege an underlying Constitutional violation:

> Defendant begins its argument by stating that the complaint is "devoid of any factual allegations that, if true, demonstrate any employee (of defendants) violated his constitutional rights ..."

> A plain reading of the complaint reveals that Defendants' officers engaged in just such conduct, not just during the hours of surrounding and then invading Plaintiff's residence but for the days that followed. This case does not involve one or two officers but numerous members of Defendant police force.

> Discovery has not been undertaken to further develop the identity of these individuals responsible for the violation of Plaintiff's rights as well as those in supervisory or command positions, who set policy, training, [7] etc. At the appropriate juncture, an amended complaint may well be in order.

**\*5** Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss at 3.

Mr. Muller's suggestion that he "may well" file an amended Complaint at some point in the future does not allow him to circumvent his pleading obligations regarding his *Monell* claim. In order for the Township to be liable under *Monell,* Mr. Muller must allege a policy or custom that caused his injuries. Mr. Muller has failed to do this with sufficient specificity. Accordingly, his § 1983 claim must be dismissed, [8] and the Court need not address the argument contained in the motion to dismiss that Mr. Muller failed to allege an underlying Constitutional violation.

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.  3

Case 2:16-cv-02530-KM-MAH Document 5-3 Filed 07/22/16 Page 20 of 31 PageID: 58
Muller v. Bristol Tp., Not Reported in F.Supp.2d (2009)
2009 WL 3028949

## B. Mr. Muller's § 1985(3) and § 1986 Claims

### 1. Mr. Muller's § 1985(3) Claim

Section 1985 describes three types of actionable conspiracies in three separate provisions: (1) preventing an officer from performing duties; (2) obstructing justice, or intimidating a party, witness, or juror; and (3) depriving persons of rights or privileges. *See* 42 U.S.C. § 1985. Mr. Muller's Complaint does not state which type of conspiracy he is alleging. However, because his Complaint does not mention either preventing any officer from performing any duties or obstructing any judicial proceeding, it is fair to assume that the first two provisions of § 1985 are inapplicable, and that Mr. Muller is asserting a claim under the third provision.

Section 1985(3) allows claims by plaintiffs who are injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a § 1985(3) claim, a plaintiff must sufficiently allege the following:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir.2006) (internal quotations omitted). A plaintiff "must allege the existence of an agreement among the defendants, as well as the duration of the conspiracy, its object, and actions taken in furtherance of it." *D'Altilio v. Dover Twp*, No. 06–1931, 2007 U.S. Dist. LEXIS 71414, *35, 2007 WL 2845073(M.D.Pa. Sept. 26, 2007). Moreover, a plaintiff must allege that the defendants were motivated by class-based animus, similar to the requirement under §§ 1981

and 1982. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268–69, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993); *Farber,* 440 F.3d at 135 (internal citations omitted).

Mr. Muller's Complaint is devoid of any allegations regarding class-based animus. Accordingly, Mr. Muller's § 1985(3) claim must be dismissed, and the Court need not address the arguments contained in the motion to dismiss that Mr. Muller failed to allege the various required particulars, namely, the existence of an agreement between the defendants, the period of the alleged conspiracy, the object of the conspiracy or the actions taken in furtherance of the conspiracy. *See, e.g., Greenberg v. United States,* No. 07–3664, 2007 U.S. Dist. LEXIS 87432, —–9– 10,2007 WL 4224410(E.D.Pa. Nov. 28, 2007) (dismissing plaintiff's § 1985(3) claim because plaintiff failed to plead class-based animus). *See also* 9/1/09 Oral Argument Tr. at 5–6.

### 2. Mr. Muller's § 1986 Claim

**\*6** Section 1986 states in part, "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the proceeding section [§ 1985], are about to be committed, and having power to prevent ... the same, neglects or refuses so to do ... shall be liable to the party injured." 42 U.S.C. § 1986. Analytically, without a valid § 1985 claim, there can be no § 1986 claim. *See Greenberg,* 2007 U.S. Dist. LEXIS 87432, at —–8–10, 2007 WL 4224410 (dismissing plaintiff's § 1986 claim because plaintiff failed to plead a § 1985 claim). Accordingly, because the Court dismisses Mr. Muller's § 1985 claim, the Court must also dismiss his § 1986 claim.

## V. CONCLUSION

For the reasons discussed above, the Court grants the pending motion and dismisses all of Mr. Muller's claims without prejudice. An Order consistent with this Memorandum follows.

## All Citations

Not Reported in F.Supp.2d, 2009 WL 3028949

Footnotes

Case 2:16-cv-02530-KM-MAH   Document 5-3   Filed 07/22/16   Page 21 of 31 PageID: 59
Muller v. Bristol Tp., Not Reported in F.Supp.2d (2009)

2009 WL 3028949

1    In Mr. Muller's Complaint, he also initially made claims against the Bristol Township Police Department. However, Mr. Muller has since conceded that Bristol Township Police Department should be dismissed from the case. *See* Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss at 5. *See also* 9/1/09 Oral Argument Tr. at 7–8.

Also, in Mr. Muller's Complaint, Mr. Muller made claims under the Pennsylvania Constitution and Pennsylvania common law. However, Mr. Muller has since conceded that these claims also should be dismissed. *See* 9/1/09 Oral Argument Tr. at 7.

2    This Motion to Dismiss was also filed on behalf of Defendant Bristol Township Police Department, but Mr. Muller has since conceded to the dismissal of Defendant Bristol Township Police Department. *See* note 1, *supra.*

3    Mr. Muller states that various acts were done by "Defendant," "members of Defendant or those under the control and command of Defendant," or the "Bristol Township Police Department." Based on the allegations of the Complaint, it is clear that Mr. Muller actually means that certain of these acts were done by the police officers making up the "SWAT-type team." For the sake of readability, the Court will make reference to the unidentified police officers (who are not parties to this case) where appropriate. This alteration in nomenclature does not affect the analysis or outcome of the case.

4    In his Complaint, Mr. Muller states that a copy of the criminal complaint was attached as Exhibit A, *see* Compl. at ¶ 19, but no exhibits appear with his Complaint.

5    Mr. Muller states that he surrendered to the "District Justice Court of Joanne Kline." Mr. Muller appears to be referring to Magisterial District Judge Joanne Kline.

6    None of the parties mention *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), or *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in their briefs on the pending motion, and counsel admitted at oral argument that they were not familiar with these cases. *See* Defs.' Br. in Supp. of Mot. to Dismiss at 3; Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss at 2; 9/1/09 Oral Argument Tr. at 9. The Court commends both cases to counsel for their future reference. In addition, while perhaps garnering recognition for his candor in volunteering that he has "disdain for [the Rules of Civil Procedure] but not contempt," 9/1/09 Oral Argument Tr. at 13, the Court reiterates the dismay prompted by that candor and also again suggests that counsel try to overcome his disdain and review the Rules.

7    A plaintiff may also recover under § 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 215 (3d Cir.2001). Hypothetically, Mr. Muller *could* bring claims against the Township on a failure to train theory. However, Mr. Muller did not plead any facts in his Complaint to support such a claim. The first time that Mr. Muller mentions "training" is in his counsel's response to the motion to dismiss.

8    Also, nowhere in Mr. Muller's Complaint does he allege any conduct by a municipal decisionmaker. *See McTernan,* 564 F.3d at 658. Mr. Muller asserts that "Defendant" and "members of Defendant or those under the control and command of Defendant" took various actions, but nowhere does he allege that the actions were directed by any municipal decisionmakers.

---

**End of Document**                                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "C"

2012 WL 2952411
Only the Westlaw citation is currently available.
United States District Court,
D. New Jersey.

Samantha LAPELLA, Plaintiff,

v.

CITY OF ATLANTIC CITY, et al., Defendants.

Civil No. 10–2454 (JBS/JS).
|
July 18, 2012.

**Attorneys and Law Firms**

Jeremy Esakoff, Pasricha & Patel LLC, Edison, NJ, for
Plaintiff.

Tracy L. Riley, Esq., Michael E. Riley, Esq., Law Offices
of Riley and Riley, Mount Holly, NJ, for Defendants City
of Atlantic City, Atlantic City Police Department, and
Thomas Moynihan.

Patrick J. Wolfe, Esq., Sharlenn E. Pratt, Esq., Zarwin
Baum Devito Kaplan Schaer & Toddy, PC, Philadelphia,
PA, for Defendant John J. Mooney.

**OPINION**

SIMANDLE, District Judge.

**I. INTRODUCTION**

*1 This matter comes before the Court on a motion
for judgment on the pleadings by Defendants City of
Atlantic City ("Atlantic City"), Atlantic City Policy
Department ("Police Department"), John J. Mooney,
and Thomas Moynihan. [Docket Item 63.] Specifically,
Defendants request judgment on the pleadings on Count
VI of Plaintiff's Amended Complaint and the resultant
dismissal with prejudice of Defendants John J. Mooney
and Atlantic City Police Department pursuant to Federal
Rule of Civil Procedure 12(c). [1] For the reasons explained
below, the Court shall grant the motion for judgment on
the pleadings. The principal issue presented is whether
Count VI of the First Amended Complaint in this
civil rights act case alleging excessive use of force in
arrest, among other claims, states a cognizable claim for
municipal liability under 42 U .S.C. § 1983. The Court

will dismiss the Atlantic City Police Department with
prejudice by the consent of both parties, but will dismiss
Count VI and Defendant Mooney without prejudice to
Plaintiff's opportunity to request leave to file a curative
amendment to provide a plausible basis for her claims
of municipal liability within fourteen (14) days of this
opinion and order.

**II. BACKGROUND**

In May 2010, Plaintiff brought this action arising from
an incident that occurred at the "mur.mur" nightclub in
the Borgata Casino (owned and operated by non-moving
defendant Marina Development District) on February 7,
2009. (Am. Compl. ¶¶ 16–18 .) At this stage the Court is
obligated to accept all of Plaintiff's allegations as true, and
so will draw the facts of this dispute solely from Plaintiff's
First Amended Complaint.

Plaintiff and her friends entered the mur.mur nightclub in
the Course of a weekend trip to Atlantic City to celebrate a
birthday. (*Id.* ¶¶ 16–18.) At some point during the evening,
members of Plaintiff's party were asked by club staff to
extinguish their cigarettes, which they immediately did.
(*Id.* ¶ 22.) In the early morning hours of February 8, 2009,
Borgata bouncers and Officer Thomas Moynihan entered
the club. (*Id.* ¶ 23). The bouncers asked Plaintiff's party to
leave the club. (*Id.* ¶ 24 .) Without allowing Plaintiff time
to leave the club, Officer Moynihan and an unidentified
bouncer "roughly grabbed her by the arms and began
carrying her toward an exit." (*Id.* ¶ 26.) Officer Moynihan
then allegedly punched Plaintiff in the face and dragged
her through an exit, where he and another officer allegedly
knelt on Plaintiff with their full body weight, handcuffed
her, lifted her from the floor by her arms, and repeatedly
slammed her face into a wall while she was unable to
brace herself. (*Id.* ¶¶ 27–31.) Plaintiff was then taken to
the Atlantic City Police Station and detained in a cell
for several hours. (*Id.* ¶ 32). Officer Moynihan signed
complaints charging Plaintiff with creating a disturbance,
aggravated assault, and resisting arrest, though all charges
were subsequently dismissed. (*Id.* ¶ 34.)

*2 Plaintiff brings suit against Officer Moynihan for use
of excessive force, false imprisonment, and false arrest
in violation of her constitutional rights. (*Id.* Counts 1–
3.) Plaintiff further brings tort claims against Officer
Moynihan for assault and battery, malicious prosecution,
as well as a claim for civil conspiracy with the Borgata
Casino. (*Id.* Counts 7, 8, 13). Plaintiff brings tort claims

against Atlantic City and the Police Department for negligent training and supervision and negligent hiring practices. (*Id.* Counts 4, 5.) Plaintiff also files suit pursuant to 42 U.S.C. § 1983 against Atlantic City, the Police Department, and Police Chief Mooney for the civil rights violations inflicted upon her by Officer Moynihan, incorporating by reference the claims of negligent training and supervision and negligent hiring practices contained in Counts IV and V. [2] (*Id.* ¶ 45 .)

Specifically, in Count VI, which is captioned "Municipal Liability," Plaintiff alleges that Atlantic City's policies and procedures in place at the time of her arrest were unlawful and improper. (*Id.* ¶ 66.) Plaintiff also alleges negligent training and supervision (Count IV) and negligent hiring (Count V), which she believes are incorporated into Count VI by reference. (Pl .'s Br. in Opp'n to Defs.' Mot. for J. on the Pleadings 10.) Finally, Plaintiff alleges in Count XV that Chief Mooney is vicariously liable for permitting Officer Moynihan's conduct to continue after he had knowledge of "the improper manner in which Defendant ... was discharging his duties." (Am. Compl. ¶ 111 .)

On January 16, 2012 Defendants Atlantic City, Atlantic City Police Department, Police Chief Mooney, and Officer Moynihan ("Moving Defendants") filed the instant Motion for Judgment on the Pleadings. *See* Fed.R.Civ.P. 12(c). Specifically, Moving Defendants assert that Count VI of Plaintiff's Amended Complaint is insufficiently plead and should be dismissed, and that as a result all claims against Defendant Mooney should also be dismissed. (Defs .' Mot. for J. on the Pleadings 4.) Moving Defendants further assert that the Police Department is not properly a party to this matter and should be dismissed as well. (*Id.* 21.)

### III. DISCUSSION

#### A. Rule 12(c) Standard

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a] fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." While a Rule 12(b) motion to dismiss a complaint must be filed before responsive pleadings, a Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed. *Turbe v. Gov't of the Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991).

However, the differences between Rules 12(b)(6) and 12(c) are purely procedural, as the pleading standards of Rule 12(b)(6) are applied for both. *Id.* Thus, the Court must "accept all factual allegations as true" and construe the complaint "in the light most favorable to the plaintiff." *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)).

**\*3** Prior to 2007, the federal courts utilized a standard of notice pleadings and would dismiss complaints for failure to state a claim only when "it appear[ed] beyond doubt that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45 (1957). However, in 2007 the Supreme Court abandoned that standard in its decision in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). In *Twombly,* the Court explained that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment]" to relief" requires more than label and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Twombly,* 550 U.S. 555 (internal citations omitted). A complaint need not provide detailed factual allegations, but it must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* at 570. The Supreme Court elaborated on and clarified the *Twombly* standard in a subsequent decision, *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). In *Iqbal,* the Supreme Court stated:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *[Twombly* ] at 570, 127 S .Ct.1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, S.Ct. 1955. The plausibility standard is not akin to a probability requirement," but it asks

for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendants liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

Two working principles underlie our decision in *Twombly.* First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, 127 S.Ct. 1955.

*Iqbal,* 556 U.S. 662.

As such, when a Court is deciding a motion under Rule 12(c), it must look closely at the complaint to determine whether it states a facially plausible claim to relief, composed of factual content and not merely conclusory allegations reflecting the cause of action.

## B. The Monell Standard under 42 U.S.C. § 1983

Plaintiff's municipal liability claims against Atlantic City, the Police Department, and Police Chief Mooney all arise under 42 U.S.C. § 1983, which reads:

> **\*4** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable for redress ...

42 U.S.C.A § 1983 (1996). Municipal liability under § 1983 may not be proven under a respondeat superior theory of liability but must be founded on evidence that the government itself supported a violation of constitutional rights. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978). Municipal liability exists only where execution of the municipality's policy or custom, whether made by lawmakers or decisionmakers whose edicts may fairly represent official policy, inflict the injury. *Id.,* at 694.

Not all state action rises to the level of a custom or policy. A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Kneipp v. Tedder,* 95 F.3d 1199, 1212 (3d Cir.1996) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. of County Comm'rs of Bryan County, Okla. V. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

*Natale v. Camden Cnty. Correctional Facility,* 318 F.3d 575, 584 (3d Cir.2003). Once a policy or custom has been shown to exist, it must then be shown that the allegedly unconstitutional conduct causally results from that policy or custom.

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County,* 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy" but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " *Id.* at 417–418, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ...

**\*5** *Natale,* 318 F.3d at 584. Thus, for a plaintiff to sufficiently allege municipal liability under § 1983, they must present facts to support a finding that a specific policy or custom caused the alleged harm.

## C. Dismissal of the Atlantic City Police Department

As a preliminary matter, the Moving Defendants request that Plaintiff's complaint as to the Atlantic City Police Department is dismissed with prejudice. (Defs.' Mot. for J. on the Pleadings 22). Municipal departments are not separate legal entities from the municipality they serve, and therefore cannot be named parties in conjunction with the municipality. *See* N.J. Stat. Ann § 40A:14–118. *See, e.g., Adams v. City of Camden,* 461 F.Supp.2d 263, 266 (D.N.J.2006); *Caldwell v. Atlantic Cnty. Animal Shelter,* Civ. No. 08–4101, 2009 WL 1173645 at *2 (D.N.J.2009); *Open Inns, Ltd. v. Chester County Sheriff's Dep't,* 24 F.Supp.2d 410, 416 n. 13 (E.D.Pa.1998). Plaintiff consents to the voluntary dismissal of the Police Department as a defendant in this matter. (Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings 1.) Consequently, the Court will dismiss the Police Department with prejudice.

**D. Judgment on the Pleadings for Count VI**
The parties dispute whether, in analyzing the sufficiency of Count VI's claims of municipal liability, Counts IV and V should be incorporated by reference. The Moving Defendants contend that Counts IV and V are state law claims that, in light of prior precedent and concepts of fairness, should not be considered in analyzing Count VI. Plaintiff, conversely, contends that Counts IV and V are properly incorporated and that the use of incorporation from prior counts allowed for efficient pleadings that still gave sufficient notice.[3] Plaintiff argues, and the Court agrees, that the allegations of Counts IV and V are reasonably interpreted as being incorporated into her theory of municipal liability in Count VI. Were Counts IV and V completely unrelated to the subject matter of Count VI, it would be unreasonable to assume that a broad incorporation by reference of all preceding allegations would be sufficient. However, *Monell* liability for failure to train and for hiring decisions is a common avenue under municipal liability theories, and the Court finds the link to be sufficiently obvious despite the confusing nature of Plaintiff's Amended Complaint.

**1. Count VI Standing Alone**
When a Plaintiff brings a complaint under *Monell* against a municipality, the offending custom, policy, or practice must be plead specifically in the complaint. *See McTernan v. City of York,* 564 F.3d 636 (3d Cir.2009); *Muller v. Bristol Twp.,* No. 09–1086, 2009 WL 3028949 (E.D.Pa. Sept. 17, 2009). "To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what

exactly that custom or policy was." *McTernan,* 564 F.3d at 658 (citing *Philips v. County of Allegheny,* 515 F.3d 224 (3d Cir.2008)). Factual allegations must give notice not only "as to the alleged wrongdoing of the individual police officers," but also "as to the alleged policy and custom of the municipality at issue." *Muller,* 2009 WL 3028949 at 4.

*6 Count VI of Plaintiff's Amended Complaint, standing alone, does not give notice as to the alleged policy or custom of the municipality at issue. The relevant components of Count VI follow:

65. As chief of police, Defendant Mooney was responsible for establishing, implementing and enforcing departmental policies and procedures on behalf of Defendant Atlantic City, including those procedures and policies in effect at the time Plaintiff was attacked and falsely arrested by Defendant Moynihan.

66. Atlantic City's policies and procedures that were in place at the time of the Plaintiff's arrest were unlawful and improper as they permitted the conduct visited upon the plaintiff.

67. Plaintiff was injured at the hands of Defendant Moynihan as a consequence of Defendant Mooney and Defendant Atlantic City's (a) establishing improper policies, (b) implementing improper policies, and/or(c) failing to enforce proper policies with respect to the conduct of its police officers.

(Am.Compl.10.) The language of Count VI is insufficient to provide notice of what policy or custom is in question. All that can be gleaned from the language used is that (1) the policy or procedure in question is one that was in effect when Plaintiff was arrested, (2) the policy or procedure is allegedly illegal because it permitted the allegedly unconstitutional conduct to occur, and (3) that Plaintiff's injury was a result of these policies.

This Count gives no notice regarding what specific policy or procedure is alleged to be improper or illegal. Such allegations of a "policy of ignoring ... right[s]" are insufficient to allege a *Monell* claim. *McTernan,* 564 F.3d at 657. Nor does it demonstrate that Officer Moynihan's conduct was in any way resultant from those policies and procedures then in place, beyond the conclusory assumption that the incident that allegedly occurred could only happen if illegal policies and procedures were in place. Plaintiff, in short, fails to provide sufficient factual

Case 2:16-cv-02530-KM-MAH   Document 5-3   Filed 07/22/16   Page 27 of 31 PageID: 65
Lapella v. City of Atlantic City, Not Reported in F.Supp.2d (2012)
2012 WL 2952411

allegations in Count VI to give Defendants notice and to allow the Court to find her claim to relief plausible on its face.

## 2. Count VI Incorporating Counts IV and V

Incorporating the rest of Plaintiff's Amended Complaint does little more to remedy the pleading infirmities of Count VI. Defendants argue in their motion that Count IV alleges a state law claim against Atlantic City for negligent training and supervision and that Count V alleges a state law claim for negligent hiring. (Defs.' Mot. for J. on the Pleadings, 17–18.) Even so, Defendants argue that if Counts IV and V are accepted as *Monell* claims they are nonetheless insufficiently pled and thus subject to dismissal. (*Id.*) The Court agrees, and finds that the incorporation of Counts IV and V is insufficient to remedy Count VI's infirm pleadings, as now discussed.

### a. Count IV [4]

To bring a claim of failure to train under § 1983, a Plaintiff must (1) identify the deficiency in training; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency constituted deliberate indifference on the part of the municipality. *Malignaggi v. County of Gloucester,* 855 F.Supp. 74, 77 (D.N.J.1994) (citing *City of Canton v. Harris,* 489 U.S. 378, 391 (1989)). To prove the training deficiency caused the alleged constitutional violation, a close causal link must be shown.

*7 This requires first that a specific deficiency rather than general laxness or ineffectiveness of training be shown. It then requires that the deficiency or deficiencies be such, given the manifest exigencies of police work, as to make occurrence of the specific violation a reasonable probability rather than a mere possibility. That is, the specific violation must be "almost bound to happen sooner or later" rather than merely "likely to happen in the long run."

*Spell v. McDaniel,* 824 F.2d 1380, 1390 (4th Cir.1987) (internal citations omitted); *see also City of Canton, Ohio v. Harris,* 489 U.S. 378, 390–93 (1989) (allowing municipal liability for deficient training only where the specific deficiency is identified, deliberate indifference on the part of policymakers is found, and causation between the deficiency and the injury suffered is shown); *Colburn v. Upper Darby Tp.,* 838 F.2d 663 (3d Cir.1988) (overruled

in part on other grounds by *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993)) (implicitly endorsing failure to train liability); *Popow v. City of Margate,* 476 F.Supp. 1237, 1246 (D.N.J.1979). To satisfy *Monell*'s requirement that a particular policy be the moving force behind a constitutional violation, there must be an affirmative link between the training inadequacies alleged and the constitutional violation at issue. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 824–25 n. 8 (1985).

To demonstrate deliberate indifference, a Plaintiff must present evidence of indifference on the part of a particular policymaker. *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1060–61 (3d Cir.1991).

> [A] municipality's deliberately indifferent failure to train is not established by (1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct.

*Id.* at 1060. Generally, deliberate indifference can be shown only by demonstrating "[a] pattern of similar constitutional violations by untrained employees," though a single incident can suffice in the rare case where the unconstitutional consequence of the failure to train is patently obvious. *Connick v. Thompson,* 131 S.Ct. 1350, 1360 (2011) (quoting *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 409 (1997)).

Here, the Court finds Count IV is not sufficiently pled as a failure to train claim under § 1983. The relevant portions of Count IV read in part:

53. Defendant Atlantic City had a duty to train and supervise its agents and employees for the benefit of the residents of, and visitors to, Atlantic City.

54. On information and belief, Defendant Atlantic City had knowledge that Defendant Moynihan has a history of mistreating civilians and failed to implement effective measures to prevent his unlawful conduct.

**\*8** 55. On information and belief, Defendant Atlantic City, as a matter of policy and practice, failed to properly train and supervise its officers to abide by the law and to respect the rights of the people they encounter, including Plaintiff, and thereby encouraged Defendant Moynihan in this case to engage in the unlawful and actionable conduct described above.

56. That negligence on the part of Atlantic City caused Plaintiff to suffer injuries at the hands of its untrained, uncontrolled and unsupervised agents and employees.

(Am.Compl.9). Plaintiff's complaint fails to allege any specific shortcoming in Atlantic City's training programs; at best it contains a conclusory allegation that the city "failed to properly train and supervise its officers to abide by the law and to respect the rights of the people they encounter." Plaintiff contends the Count is sufficient because it "identifies Atlantic City's custom of responding with indifference to its officers' routine disregard for the rights of civilians, including their use of unnecessary force, false arrest, and false imprisonment," noting that the language of paragraph 55 incorporates the factual claims of paragraphs 27–31 and 42. (Pl.'s Br. in Opp'n to Defs.' Mot. for J. on the Pleadings 7.) While alleging a custom requires a showing of indifference to a known illegal activity, it is insufficient to allege a custom of indifference. Indifference is not a custom, and merely alleging a "custom of indifference" is no less conclusory than alleging a "custom" itself.

Plaintiff further fails to plausibly allege how the deficiency caused her injury, merely alleging that the insufficient training "encouraged Defendant Moynihan in this case to engage in the unlawful and actionable conduct described above." This allegation provides no factual support to establish the plausibility of a causal link between the allegedly insufficient training and the harm that befell Plaintiff.

Finally, Plaintiff must sufficiently allege deliberate indifference on the part of the decisionmaker. Here, Plaintiff alleges that Atlantic City knew of Officer Moynihan's alleged "history of mistreating civilians." However, Plaintiff fails to demonstrate that the resulting outcome is a result of municipal policy and not an officer's individual shortcomings. Furthermore, Plaintiff fails to allege sufficient facts to demonstrate that Officer Moynihan's alleged conduct was "almost bound to

happen sooner or later" and that the Police Department deliberately ignored that risk. *Spell,* 824 F.2d at 1390. In fact, Plaintiff fails to allege any factual basis to support the conclusion Officer Moynihan had a history of mistreating civilians. While Plaintiff may be able to show negligence on the alleged facts, Count IV is not sufficiently pled as to support municipal liability under § 1983, as it does not plead sufficient facts to support the otherwise conclusory allegation that the city acted with deliberate indifference.

**b. Count V[5]**

**\*9** To bring a claim of deliberate indifference in hiring under § 1983, a plaintiff must be able to plausibly allege that "this officer was highly likely to inflict the particular injury suffered by the plaintiff" and that the decisionmaker was deliberately indifferent to that likelihood in hiring the offending party. *Bd. Of Cnty. Comm'rs,* 520 U.S. at 411. Plaintiff, however, again fails to allege sufficient non-conclusory facts to support this claim. Plaintiff's pleadings in Count V read:

59. Defendant Atlantic City had a duty to determine the character and moral fitness of all applicants for the position of police officer before hiring them.

60. Defendants Atlantic City had a duty to discharge those officers who demonstrate an inability or unwillingness to abide by the law and/or an inability to treat people with the respect and rights to which they are entitled by virtue of the applicable laws and constitutions.

61. On information and belief, Defendant Moynihan has been involved in other incidents that indicate a disregard for the rights of the residents and guests of Atlantic City.

62. The defendants failed to discharge their respective duties by hiring Defendant Moynihan and then by failing to terminate his employment.

(Am.Compl.10.) Plaintiff's allegation that Defendant Moynihan has been involved in incidents that indicate a disregard for the rights of others is not sufficient to demonstrate either that (1) Officer Moynihan had committed constitutional rights violations in the past or (2) that when Officer Moynihan was hired (and in the inverse continuously employed) Atlantic City knew or should have known that Officer Moynihan was highly likely to violate the constitutional rights of civilians

Case 2:16-cv-02530-KM-MAH   Document 5-3   Filed 07/22/16   Page 29 of 31 PageID: 67
**Lapella v. City of Atlantic City, Not Reported in F.Supp.2d (2012)**
2012 WL 2952411

through excessive use of force and false arrest. Nor does Plaintiff allege deliberate indifference on the part of Atlantic City. Within Count V, Plaintiff makes no allegation that Atlantic City knew Officer Moynihan was likely to cause harm similar to that herein.

Even incorporating Count IV, the fact Atlantic City had knowledge of a prior history of mistreating civilians (a conclusory restatement of the requirements of the cause of action) is not alone sufficient to prove deliberate indifference. Plaintiff provides no factual allegations that make it plausible that Officer Moynihan should have been discharged, that Atlantic City knew this, and that Atlantic City disregarded this with deliberate indifference. As such, the Court finds Count V is also insufficiently pled and cannot support a claim for municipal liability under § 1983. [6]

As Plaintiff fails to provide sufficient factual allegations that, if accepted as true, would create a plausible claim to relief under § 1983, the Court will grant judgment on the pleadings to the Moving Defendants on Count VI.

**E. Dismissal of Defendant Mooney**
Defendants also move for the dismissal of Police Chief Mooney from this case. Police Chief Mooney is only named in Counts VI and XV of the Amended Complaint. Count VI, which has been previously discussed, is dismissed for failure to state a claim. Thus, only Count XV remains against Police Chief Mooney. Defendants believe Count XV, entitled "vicarious liability," must be a state law claim under the New Jersey Tort Claims Act (NJTCA) as there is no vicarious liability available under § 1983. [7] (Defs.' Mot. for J. on the Pleadings 20.)

*10 Plaintiff, in turn, counters that Plaintiff does not allege Police Chief Mooney is liable as a supervisor, but rather as the Chief of Police responsible for establishing the policies that caused the injury to Plaintiff under *Monell.* (Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings 16.) Plaintiff's reply brief does not address any NJTCA claims Count XV may contain, nor why Count XV is entitled "vicarious liability" if it is indeed being pled as a *Monell* claim under § 1983 in which vicarious liability is disallowed. [8] As it is ambiguous what law forms the basis of Count XV in the Amended Pleadings, and as Plaintiff attests in her opposition brief that Count XV is pled under a theory of municipal liability and not a state

law respondeat superior claim, the Court will accept it as such.

Incorporating Count XV into the prior analysis of Plaintiff's § 1983 claim does not change its conclusory nature. Count XV reads in part:

> 111. On information and belief, Defendant Mooney had actual knowledge of the improper manner in which Defendant Moynihan was discharging his duties as an Atlantic City police officer.

> 112. Defendant Mooney acquiesced in Defendant Moynihan's unlawful activities by permitting the conduct to continue.

> 113. As a consequence of Defendant Mooney's acquiescence, Plaintiff was injured.

This Count echoes Counts IV–VI, except as applied to Police Chief Mooney. "A supervisor may be personally liable ... if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir.2004). The elements of the cause of action alleged are two-fold, that the supervisor have knowledge of the subordinates' violations and that the supervisor acquiesce in the subordinates' violations. Plaintiff alleges just that, that Police Chief Mooney had knowledge of and acquiesced in Officer Moynihan's conduct.

However, while Plaintiff alleges the elements of the cause of action, she provides no factual allegations to support a plausible basis for relief. Rather, Plaintiff recites the elements of the cause of action in legal boilerplate. This is insufficient under Rule 8 and this Count must be dismissed. [9]

**F. Plaintiff's Request to Amend**
Plaintiff requests that, if the Court is inclined to dismiss any part of the Amended Complaint, she be afforded an opportunity to amend the complaint to comply with the applicable pleading requirements. (Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings, 17.) It is the policy of the Third Circuit, when a complaint is vulnerable to Rule 12(b)(6) dismissal, to permit curative amendment unless such amendment would be inequitable or futile.

*See Phillips v. County of Allegheny,* 515 F.3d 224, 236 (3d Cir.2002) (citing *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir.2002)).

*11 Plaintiff filed her original complaint on May 13, 2010. [Docket Item 1.] In its September 15, 2010 Scheduling Order the Court set February 1, 2011 as the deadline for amending pleadings. [Docket Item 19.] Plaintiff did not request to amend her complaint until her July 6, 2011 cross-motion, which was granted by the Court [Docket Item 40.] By the time Plaintiff filed her Amended Complaint, August 23, 2011, discovery in this case had been ongoing for some time.

The procedural situation is complicated by the fact that rather than challenging the pleadings at the outset Defendants waited until well into discovery to file the present motion for judgment on the pleadings. Defendants' delay pushes the limits of the requirement that motions for judgment on the pleadings are made "early enough not to delay trial". Fed.R.Civ.P. 12(c). Allowing Plaintiff to amend the Complaint could result in additional discovery, and could further delay the prompt resolution of this matter.

At this late stage in the pre-trial development of this case, the Court is disinclined to allow Plaintiff unlimited freedom to amend her complaint. However, the Court is cognizant of the fact the lateness of this motion is a result of Defendants' strategic decision to file a delayed motion under Rule 12(c) and not Rule 12(b)(6). Furthermore, the late stage at which this matter has arisen makes the Court especially wary of dismissing infirm pleadings that might not be beyond remedy.

The Court will therefore allow Plaintiff to separately file a succinct motion for leave to file an amended complaint, with a copy of the proposed amended complaint attached pursuant to Local Rule 7.1(f). To limit the prejudice to Defendants, Plaintiff's amended complaint is to address only those pleading infirmities at issue in the present motion and is not to materially change any of Plaintiff's causes of action, nor may Plaintiff attempt to add new parties in this two-year-old suit. Rather, Plaintiff's amendments are to focus on adding additional factual allegations to the complaint to render it compliant with the pleading standards set forth by *Twombly* and *Iqbal. See, e.g., Downey v. Coalition Against Rape and Abuse, Inc.,* 143 F.Supp.2d 423 (D.N.J.2001). The Court shall grant Plaintiff fourteen (14) days from the entry of the accompanying order in which to file the motion for leave to file an amended complaint. If the motion is not received in that time, the Court will consider the dismissal of Count VI and the dismissal of Defendant Mooney to be with prejudice.

## IV. CONCLUSION

For the reasons discussed above, the Court will partially grant Defendants' motion for judgment on the pleadings. By the consent of both parties, the Court will dismiss with prejudice all claims against the Atlantic City Police Department. The Court will dismiss Count VI of Plaintiff's Amended Complaint, and thus Plaintiff's theory of municipal liability under 42 U.S.C. § 1983, without prejudice. The Court will further dismiss Police Chief Mooney from this complaint without prejudice, as the only claim against him is the municipal liability claim embodied in Count VI. Plaintiff may file a motion for leave to amend the Complaint to cure the defects within fourteen (14) days consistent with this opinion. To protect against undue prejudice to the Defendants, Plaintiff may only amend her complaint with respect to the deficiencies addressed by the present motion. If Plaintiff fails to timely file a motion for leave to amend, then the dismissal of Count VI and Defendant Mooney will be with prejudice. The accompanying Order is entered.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 2952411

## Footnotes

1     Plaintiff, in her Reply Brief, states that the present motion requests "an order denying Plaintiff's motion to compel discovery responses." (Pl.'s Brief in Opp'n to Defs.' Mot. for J. on the Pleadings 1.) However, as Plaintiff herself admits the Defendants have not fashioned their application as an appeal of the Magistrate Judge Joel Schneider's order to compel, nor have they followed the procedures for such an appeal. (*Id.*) In analyzing the Defendants' submissions (including their sample order setting forth the requested relief), the Court can find no basis to conclude that Defendants request such an order, and therefore will not address that aspect of the present matter.

Lapella v. City of Atlantic City, Not Reported in F.Supp.2d (2012)

2012 WL 2952411

2    Plaintiff also brings claims against the Marina District Development Company, LLC (the Borgata) but as that defendant is not essential to the present motion those claims are not listed.

3    The Court notes Plaintiff's argument that such incorporation is required under Fed.R.Civ.P. 8's requirement of a "short, plain statement of claims." By incorporating all preceding allegations into each count, Plaintiff engages in shotgun pleadings that obfuscate her claims and defy the mandate of Rule 8, denying Defendants of the fullest extent of notice to which they are entitled. See e.g., Anderson v. District Bd. of Trustees of Cent. Florida Community College, 77 F.3d 364 (11th Cir.1996); Davis v. Coca–Cola Bottling Co. Consol., 516 F.3d 955 (11th Cir.2008) (denying attorneys fees due to shotgun pleadings); Sikes v. Teleline, Inc., 281 F.3d 1350, 1356 n. 9 (11th Cir.2002). In the future, Plaintiff is advised to explicitly incorporate relevant counts rather than incorporating all prior counts, so as to more clearly elucidate what components of her claim are incorporated into each charge.

4    This analysis does not address or affect the merits of Plaintiff's state law claim of negligent training and supervision. As explained infra, Count IV is regarded only as a claim arising at state law under the New Jersey Tort Claims Act, which has not been attacked in the present motion.

5    This analysis does not address or affect the merits of Plaintiff's state law claim of negligent hiring. As explained herein, Count V is regarded as stating only a state law claim arising under the New Jersey Tort Claims Act which is not attacked in the present motion.

6    Further, Plaintiff has had ample opportunity to gather facts since February, 2009, and in discovery in this case, to set forth the required plausible factual basis for any municipal liability claim premised on failure to train or supervise Officer Moynihan as part of a municipal custom or policy. It is reasonable to expect that such allegations be plead within 14 days or that such a claim be lost.

7    For support of this proposition see, e.g., Iqbal, 556 U.S. at 676 (recognizing that vicarious liability is inapplicable to § 1983 suits); Monell, 436 U.S. at 692 (denying the theory of respondeat superior in § 1983 actions).

8    In Monell, the Supreme Court examined the text and legislative history of § 1983 and concluded that Congress intended the statute to impose liability on "a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." Monell, 436 U.S. at 692. The Court found that the statute was not intended to provide vicarious liability against government employers for the actions of employees, and recognized that such vicarious liability would be constitutionally problematic. Id. at 693.

9    To the extent Defendant Mooney is sued in his official capacity, the suit is in all respects other than name a suit against the entity of which he is an agent. See Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell, 436 U.S. at 690, n. 55.

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.