UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MALCOLM WILEY,                              :
                                           :
            Plaintiff,                     :
                                           :
                                           :
vs.                                        :        Civil Action No.
                                           :        2:16-cv-02530-KM-MAH
                                           :
NEWARK POLICE DEPARTMENT,                  :
CITY OF NEWARK, ESSEX                      :
COUNTY, ESSEX COUNTY                       :
SHERIFF OFFICE, NEWARK                     :
POLICE DEPARTMENT OFFICERS                 :
JOHN DOES 1-50                             :
                                           :
            Defendants.                    :
                                           :

---

**DEFENDANT'S CITY OF NEWARK BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT, PURSUANT TO FED.R.CIV.P. 12(b)(6), IN LIEU OF ANSWER**

---

                        KENYATTA STEWART,
                        ACTING CORPORATION COUNSEL
                        CITY OF NEWARK – DEPARTMENT OF LAW
                        920 Broad Street, Room 316
                        Newark, New Jersey 07102
                        Attorney for Defendants
                        Newark Police Department and City
                        of Newark

On the Brief:
Emilia Perez, Esq.

TABLE OF CONTENTS

TABLE OF CONTENTS ............................................... i
TABLE OF AUTHORITIES .......................................... iii
PRELIMINARY STATEMENT ........................................... 1
STATEMENT OF FACTS .............................................. 4
LEGAL ARGUMENT ................................................. 10

    I.    LEGAL STANDARD

        .................................................. 9

    II.   THE NEWARK POLICE DEPARTMENT IS NOT A PROPER PARTY TO
        THIS ACTION

        ................................................. 12

    III. PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983 CLAIM FOR
        EXCESSIVE FORCE AS POLICE DEFENDANTS ARE IMMUNE FROM
        LIABILITY AS THEIR CONDUCT DURING THE PURSUIT DID NOT
        SHOCK THE CONSCIENCE AND THEY WERE JUSTIFIED IN
        GIVING CHASE TO PREVENT PLAINTIFF FROM FLEEING.

        ................................................. 12

    IV.  PLAINTIFF FAILS TO PLEAD A CLAIM FOR REFUSAL TO
        PROVIDE MEDICAL CARE IN VIOLATION OF 42 U.S.C. § 1983
        AND THE FOURTH AND FOURTEENTH AMENDMENTS AS
        PLAINTIFF'S FACTS, AS PLEADED, DO NOT SUPPORT THE
        ALLEGATION THAT THE OFFICERS ACTED WITH DELIBERATE
        INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS.

        ................................................. 15

    V.   PLAINTIFF FAILS TO PLEAD A MONELL CLAIM AGAINST THE
        CITY, AS HE DOES NOT IDENTIFY THE POLICIES AND
        PRACTICES WHICH HE CLAIMS CAUSED HIS INJURIES OR
        CONSTITUTIONAL DEPRIVATION.

        ................................................. 16

    VI.  PLAINTIFF FAILS TO STATE A CLAIM FOR UNLAWFUL SEARCH
        AND SEIZURE/FALSE ARREST, UNDER 42 U.S.C. § 1983, AS
        THE OFFICERS HAD PROBABLE CAUSE FOR PLAINTIFF'S
        ARREST.

        ................................................. 20

VII. PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY AS THE OFFICERS'S ACTIONS WERE OBJECTIONABLY REASONABLE UNDER THE CIRCUMSTANCES.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VIII. PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS THE CITY IS NOT CAPABLE OF ENGAGING IN INTENTIONAL CONDUCT AND DID NOT VIOLATE ANY DUTY OWED TO PLAINTIFF.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IX. WITH RESPECT TO ALL OF PLAINTIFF'S TORT CLAIMS (ASSAULT AND BATTERY AND NEGLIGENCE), THE TORT CLAIMS ACT ABSOLUTELY IMMUNIZES THE CITY IN THIS MATTER PURSUANT TO N.J.S.A. 59:5-2(B) AND (C); BECAUSE THERE WAS NO WILLFUL MISCONDUCT.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

X. PLAINTIFF FAILS TO STATE A CLAIM FOR RESPONDEAT SUPERIOR/SUPERVISORY LIABILITY AGAISNT THE CITY AS THERE WAS NO CONSTITUTIONAL VIOLATION.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

XI. PLAINTIFF'S CLAIM SHOULD BE DISMISSED AS PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT TRAINING, RETENTION, AND SUPERVISION AS PLAINTIFF FAILS TO IDENTIFY ANY DEFICIENCIES IN THE CITY'S TRAINING, RETENTION, AND SUPERVISION OF ITS OFFICERS.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XII. PLAINTIFF FAILS TO STATE A CLAIM FOR RACE DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AS PLAINTIFF FAILS TO PLEAD FACTS TO SUPPORT THE ALLEGATION THAT THE OFFICER'S ACTIONS WERE MOTIVATED BY PLAINTIFF'S RACE.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XIII.   PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES MUST BE
DISMISSEDM BECAUSE THE CITY AND THE UNKNOWN
DEFENDANT OFFICERS, IN THEIR OFFICIAL CAPACITY,
CANNOT BE LIABLE FOR PUNITIVE DAMAGES.
.................................................. 38

XIV. PLAINTIFF'S CLAIM FOR PRE-JUDGMENT INTEREST IS
BARRED UNDER THE TORT CLAIMS ACT N.J.S.A. 59:9-2
(a).
.................................................. 39

XV.  PLAINTIFF'S ALLEGATIONS OF FALSE ARREST ARE TIME-
BARRED AND SHOULD BE DISMISSED.
.................................................. 39

XVI. NEW JERSEY FICTITIOUS PARTY RULES BAR PLAINTIFF'S
CLAIM FOR FALSE ARREST BECAUSE PLAINTIF FAILED TO
EXERCISE DUE DILIGENCE IN LEARNING THE INDENTITY OF
HIS ARRESTING OFFICERS BEFORE THE EXPIRATION OF THE
STATUTE OF LIMITATIONS.
.................................................. 41

CONCLUSION .................................................. 46

## TABLE OF AUTHORITIES

Cases

Adams v. Williams,
 407 U.S. 143 (1972) ......................................... 22
Adickes v. S. H. Kress & Co.,
 398 U.S. 144 (1970) ......................................... 18
Alston v. City of Camden,
 168 N.J. 170 (2001) .................................... Passim
Amato v. U.S.,
 549 F. Supp. 863 (1982) ..................................... 25
Andrews v. City of Philadelphia,
 895 F.2d 1469 (3d Cir.1990) ................................. 31
Argueta v. U.S. Immigration & Customs,
 643 F.3d 60 (3d Cir. 2011) ................................. 37
Arlington Heights v. Metro. Housing Dev. Corp.,
 429 U.S. 252 (1977) ......................................... 38
Ashcroft v. Iqbal,
 556 U.S. 662 (2009) ............................... 10, 36, 37
Bd. of the County Comm'Rs v. Brown,
 520 U.S. 397 (1997) ......................... 19, 33, 34, 35
Beck v. City of Pittsburgh,
 89 F.3d 966 (3d. Cir. 1996) ............................ 18, 19
Beck v. Ohio,
 379 U.S. 89, (1964) ......................................... 21
Bell Atlantic Corp. v. Twombly,
 550 U.S. 544 (2007) ................................... 10, 32
Berg,
 219 F.3d ............................................... 19, 20
Bielevicz v. Dubinon,
 915 F.2d 845 (3d Cir. 1990) ........................... 19, 20
Bonenberger v. Plymouth Twp.,
 132 F.3d 20 (3d Cir. 1997) ................................. 12
Brosseau v. Haugen,
 543 U.S. 194 (2004) ......................................... 23
Buckley v. Trenton Saving Fund Soc.,
 111 N.J. 355 (1988) ......................................... 26
Canico v. Hurtado,
 144 N.J. 361 (1996) ......................................... 24
Cardona v. Data Sys. Computer Centre,
 261 N.J. Super. 232 (App. Div. 1992) ............. 44, 45, 46
Carswell v. Borough of Homestead,
 381 F.3d 235 (3d Cir. 2004) ........................... 24, 25
Chavez v. Illinois State Police,
 251 F.3d 612 (7th Cir.2001) ................................ 38
City of Canton v. Harris,

489 U.S. 378 (1988) ...................................... 32, 33

City of Newport v. Fact Concerts, Inc.,
453 U.S. 247 (1981) ........................................... 39

Colburn v. Upper Darby Twp.,
946 F.2d 1017 (3d Cir. 1991) ................................. 33

County of Sacramento v. Lewis,
523 U.S. 833 (1998) ................................. 13, 14, 15

Curley v. Klem,
499 F.3d 199 (3d Cir. 2007) ................................. 25

Davis v. Hillside,
190 F.3d 167 (1999) ................................... 13, 15

DeBellis v. Kulp,
166 F. Supp. 2d 255 (E.D. Pa. 2001) ......................... 32

Dowling v. City of Philadelphia,
855 F.2d 136 (3d Cir. 1988) ................................. 21

Dunlea v. Twp. of Belleville,
349 N.J. Super. 506 (App. Div.) ............................. 24

Farrell v. Votator Div. of Chemetron Corp.,
62 N.J. 111 (1973) ................................. 42, 43, 45

Fielder v. Stonack,
141 N.J. 101 (1995) ................................... 29, 30

Fletcher v. O'Donnell,
867 F.2d 791 (3d Cir. 1989) ................................. 19

Fowler v. UPMC Shadyside,
578 F.3d 203 (3d Cir. 2009) .............................. 11, 36

Genty v. Res. Trust. Corp.,
937 F.2d 899 (3d Cir. 1991) ................................. 41

Gormley v. Wood-El,
218 N.J. 72 (2014) .................................... 23, 25

Greczyn v. Colgate-Palmolive,
183 N.J. 5 (2005) .......................................... 44

Groman v. Twp. of Manalapan,
47 F.3d 628 (3d Cir.1995) ................................... 16

Hopp v. City of Pittsburgh,
194 F.3d 434 (3d. Cir. 1999) ............................... 17

Jackson v. City of Erie Police Dep't,
570 Fed. Appx. 112 (3d Cir. 2014) ......................... 12

Johnson v. Campbell,
332 F.3d 199 (3d Cir. 2003) ................................. 21

Kingsmill v. Szewczak,
117 F. Supp.3d 657 (E.D. Pa. 2015) ......................... 32

Kollar v. Lozier,
286 N.J. Super. 462 (App. Div. 1996) .................... 29, 30

Leipziger v. Township of Falls,
2001 WL 111611 (E.D.Pa. Feb. 1, 2001) ...................... 39

Mantz v. Chain,
239 F. Supp. 2d 486 (D.N.J. 2002) .......................... 39

Marion v. Borough of Manasquan,
  231 N.J. Super. 320 (App. Div. 1989) .........................43

Matynska v. Fried,
  175 N.J. 51 (2002) ..........................................45
Michigan v. DeFillippo,
  443 U.S. 31 (1979) ..........................................22
Monell v. Dep't of Social Serv.,
  436 U.S. 658 (1978) .....................................Passim
Montgomery v. De Simone,
  159 F.3d 120 (3d. Cir. 1998) ................................17
Neitzke v. Williams,
  490 U.S. 319 (1989) .....................................10, 11
New Jersey,
  200 N.J. Super. (App. Div. 1984) ............................40
Onossian v. Block,
  175 F.3d 1169 (1999) ........................................13
O'Connor v. City of Newark,
  440 F.3d 125 (3d Cir. 2006) .................................40
Pembaur v. City of Cincinnati,
  475 U.S. 469 (1986) .........................................17
Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.,
  106 F. Supp. 2d 761 (D.N.J. 2000) ...........................11
Pierce v. Cherry Hill Tp.,
  2013 WL 3283952 .............................................16
Ramirez v. United States,
  998 F. Supp. 425 (D.N.J. 1998) ..............................39
Ramos v. Flowers,
  429 N.J. Super. 13 (App. Div. 2012) .........................24
Reitz v. City of Bucks,
  125 F.3d 139 (3rd Cir. 1997) ................................35
Rizzo v. Goode,
  423 U.S. 362 (1976) .........................................31
Rode v. Dellarciprete,
  845 F.2d 1195 (3d Cir.1988) .................................31
Southerland v. Pennsylvania,
  389 F. App'x 166 (3d Cir. 2010) .............................23
Stegmeier v. St. Elizabeth Hospital,
  239 N.J. Super. 475 (App. Div. 1990) ........................44
Stolinsky v. Pennypacker,
  772 F. Supp. 2d 626 (D.N.J. 2011) ...........................21
Tice v. Cramer,
  254 N.J. Super. 641 (App. Div. 1992) ....................27, 28
Vickers v. Childs,
  530 F. App'x 104 (3d Cir. 2013) .............................41
Viviano v. CBS, Inc.,
  101 N.J. 538 (1986) .....................................42, 43

Wallace v. Kato,
  549 U.S. 384 (2007) ......................................... 41


Walmsley v. City of Phila.,
  872 F.2d 546 (3d Cir.1989) ................................. 16
Washington v. Systems Maintenance Corp.,
  260 N.J. Super. 505 (Law Div. 1992) .................... 43, 44
Wildoner v. Borough of Ramsey,
  162 N.J. 375 (2000) ........................................ 25
Williams v. Trenton Police Dept.,
  591 Fed. App'x 56 (3d Cir. 2015) .......................... 41
Wilson v. Russo,
  212 F.3d 781 (3d Cir.2000) ................................ 22
Younger v. Kracke,
  236 N.J. Super. 595 (Law Div. 1989) ...................... 46

Statutes
42 U.S.C. § 1983 ...................................... Passim
N.J.S.A. 40A:14-118 ....................................... 12
N.J.S.A. 59:5-2(b) and (c) ................................ 27
N.J.S.A. 59:9-2 (a) .................................... 4, 40
N.J.S.A. 59:9-2(c) ........................................ 39
N.J.S.A. § 59:3-3 ......................................... 25
N.J.S.A. § 59:5-2(b)(1)-(3), (c) .......................... 27
N.J.S.A. §§ 59:1-1 to 12 .................................. 24

Rules
Federal Rule of Civil Procedure 8(a)(2) .................... 2
New Jersey Court Rule 4:26-4 ...................... 42, 44, 46

## PRELIMINARY STATEMENT

Plaintiff, Malcolm Wiley, ("Plaintiff") brings the instant action alleging the violation of his civil rights arising from an incident in which unnamed officers purportedly struck Plaintiff with a vehicle when Plaintiff failed to yield for an investigatory stop.

Plaintiff filed an Amended Complaint naming the City of Newark and its Police Department as Defendants (collectively referred as "the City") and unknown Newark Police Officers ("Unknown Defendant Officers"). In his Amended Complaint Plaintiff alleges claims under 42 U.S.C. § 1983 ("Section 1983") for excessive force, denial of medical care, and unlawful seizure/false arrest against Unknown Defendant Officers. Moreover, Plaintiff asserts common law claims for battery and negligence. Additionally, he asserts claims for intentional and negligent infliction of emotional distress against Unknown Defendant Officers. Plaintiff alleges that the City is liable for the officer's conduct under the theory of respondeat superior. Plaintiff also alleges a claim under Monell v. Dep't of Social Serv., 436 U.S. 658, 688-689 (1978), against the City. Moreover, Plaintiff asserts negligent supervision, training, and retention claims. Plaintiff alleges that he suffered permanent physical and emotional injuries as a result of the alleged constitutional violations. Plaintiff is seeking compensatory

1

and consequential damages, economic losses, punitive damages, attorney's fees and costs, and pre and post judgment interest from the City.

While the City rejects the redundant and confusing version of events presented in the Amended Complaint, even assuming the truth of those allegations, none of Plaintiff's claims are actionable. Accordingly, the City seeks dismissal of Plaintiff's Complaint in its entirety as it fails to state plausible claims, under Federal Rule of Civil Procedure 8(a)(2), for which relief can be granted for several reasons. First, Plaintiff fails to state a claim for excessive force as Unknown Defendant Officers are immune from liability since their conduct during the pursuit did not shock the conscience and they were justified in giving chase to prevent Plaintiff from fleeing. Second, Plaintiff fails to state a claim for refusal of medical care since the facts as pled do not support the allegation that Unknown Defendant Officers acted with deliberate indifference to the Plaintiff's serious medical needs. Third, Plaintiff fails to plead sufficient facts to state a Monell claim against the City as Plaintiff does not identify the policies or practices that caused his injuries or constitutional deprivation. Fourth, Plaintiff fails to state a claim for unreasonable seizure/false arrest in violation of the Fourth Amendment as his arrest was lawful. Fifth, Plaintiff's claims for constitutional violations

2

are barred under the Doctrine of qualified immunity as Unknown Defendant Officers acted objectionably reasonable. Sixth, Plaintiff fails to state a claim for intentional infliction of emotional distress since there was no intentional conduct. Additionally, Plaintiff fails to plead sufficient facts for a negligent infliction of emotional distress claim as Unknown Defendant Officers did not violate a duty owed to Plaintiff. Seventh, Plaintiff fails to state a claim for respondeat superior/supervisory liability as there was no constitutional violation and the facts as pled do not support the allegation that the City knew about and acquiesced in any wrongdoing. Eight, Plaintiff fails to state a claim for negligent supervision, training and retention as he does not identify any deficiencies in the City's training, supervision, or retention of its employee that was the cause of Plaintiff's constitutional violation. Ninth, Plaintiff fails to state a claim for race discrimination in violation of the Equal Protection Clause of the 14th Amendment since there is no indication that Unknown Defendant Officers' conduct was motivated by race. Tenth, Plaintiff fails to state a claim for punitive damages against the City and the Unknown Defendant Officers in their official capacity because such damages are barred by the Tort Claims Act. Eleventh, Plaintiff is not entitled to pre-judgment interest from because N.J.S.A. 59:9-2 (a) bars the recovery pf

3

prejudgment interest against a municipality or public employee. Twelfth, the City is immune from liability with respect to all of Plaintiff's Tort Claims (assault and battery, gross negligence, and negligence) because they are immune from liability under the New Jersey Tort Claims Act ("TCA") for any injuries arising from the pursuit of an escaping or eluding person and did not commit willful misconduct. Similarly, they cannot be held liable under Section 1983 of the Federal Civil Rights Act ("§ 1983"), as a matter of law, for an injury caused by a criminal eluding the police, especially where the police had no intent to cause harm or injury. Twelfth, Plaintiff's allegations of unreasonable seizure/false arrest are time barred. Finally, New Jersey fictitious party rules bar Plaintiff's claim for false arrest because Plaintiff failed to exercise due diligence in learning the names of his arresting officers before the expiration of the two year statute of limitations.

For these reasons, the Complaint should be dismissed with prejudice as to the City for failure to state a claim.

## STATEMENT OF FACTS

### A. Background

1. For the purposes of this motion, the facts alleged in the Complaint are taken as true.

2. On or about May 6, 2014, Plaintiff was struck by a vehicle operated by Unknown Defendant Officers after Plaintiff failed to yield for an investigatory stop. (See Amended Complaint, D.E. #21, at ¶ 12).

3. The Police Officer Defendants were operating a marked Newark Police Department police car. (Id.)

4. Plaintiff alleges that he was arrested without warning, justification, or provocation and transported to the nearest precinct. (Id. at ¶ 13).

5. Plaintiff alleges that he has suffered permanent injuries to his hip, back, right and left thighs and head and mental and emotional injuries. (Id. at ¶ 14-23).

6. Plaintiff alleges that the Unknown Defendant Officers acted in concert when they targeted and attacked him and were engaged in a joint venture by assisting each other in performing those actions and lending their physical presence and support and their authority to one another. (Id. at ¶ 14-15).

7. Plaintiff alleges that the onlookers requested medical assistance for the Plaintiff, but the requests were ignored. (Id. at ¶ 17).

8. Plaintiff alleges that the conduct of the officers in arresting and assaulting him was without probable cause, was excessive, was done maliciously, falsely and in bad

faith. (Id. at ¶ 20).

9. Plaintiff alleges that as a result of the officer's conduct he suffered emotional trauma, discomfort, humiliation, fear, anxiety and embarrassment. (Id. at ¶ 15).

10.   Plaintiff alleges that the Unknown Defendant Officers were acting in concert and individually in violating Plaintiff's rights under the State and Federal Constitution. (Id. at ¶ 28).

B. **Procedural History**

11.   On May 4, 2016, Plaintiff filed his Complaint against the Newark Police Department, City of Newark, Essex County Sheriff's Office and Newark Police Department Officers John Does 1-50.

12.   The Complaint alleges ten causes of action. The City filed a Motion to Dismiss, pursuant to Fed. R. 12(b)(6). Plaintiff then filed a Motion for Leave to Amend the Complaint. On January 24, 2017, the court administratively withdrew the Motion to Dismiss and granted Plaintiff leave to amend the complaint. Plaintiff did not file an Amended Complaint until May 1, 2017. (D.E. #21).

13.   The City files the herein Motion to Dismiss, pursuant to Fed. R. 12 (b)(6).

14.   Plaintiff was served with the City's Rule 26

Disclosures on or about January 6, 2017. The disclosures specifically identify which officers were involved in Plaintiff's arrest and incident. (See Defendant's Rule 26 Disclosures, attached to the City's Second Motion to Dismiss filed 4/13/2017 as Docket Entry #18-3).

C. <u>Allegations in the Complaint</u>

15.   The First Cause of Action seeks a remedy through Section 1983 and avers that Unknown Defendant Officers' alleged use of excessive force violated Plaintiff's rights under the Fourth and Fourteenth Amendment. (D.E. #21, <u>Id</u>. at ¶ 36-39).

16.   The Second Cause of Action seeks a remedy through Section 1983 and the Fourteenth Amendment from Unknown Defendant Officers. (D.E. #21, at ¶ 40-43). Plaintiff claims that the officers were aware that he was injured and did not take any action to provide or request medical care for Plaintiff, disregarding the obvious risk to Plaintiff's health. (<u>Id</u>.).

17.   The Third Cause of Action is a <u>Monell</u> claim against the City. (<u>Id</u>. at 44-53). Plaintiff alleges that the City had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the Defendants Police Officers which caused damages and injuries to Plaintiff. (<u>Id</u>.).

18.    Plaintiff also alleges that it was the policy and/or custom of the City of Newark to inadequately train, supervise, and discipline its officers. (Id. at ¶ 51)

19.    The Fourth Cause of Action is a Section 1983 claim for unlawful seizure/false arrest. (Id. at ¶ 54-57). Plaintiff alleges that he was deprived of his right to freedom from unlawful search and seizure as he was arrested without probable cause. (Id.).

20.    Plaintiff asserts a common law assault and battery claim against Unknown Defendant Officers. (D.E. #21, Id. at ¶ 58-63). Plaintiff alleges that the officers assaulted Plaintiff by intentionally attempting to injure Plaintiff or commit a battery upon the Plaintiff. (Id. at ¶ 59).

21.    The Sixth Cause of Action is an intentional infliction of emotional distress claim. (Id. at ¶ 64-66). Plaintiff alleges that Unknown Defendant Officers engaged in extreme and outrageous conduct which was intended to cause and did cause emotional distress. (Id.).

22.    Similarly, the Seventh Cause of Action is a negligent infliction of emotional distress claim. Id. at ¶ 68-70). Plaintiff alleges that the Unknown Defendant Officers were careless and negligent to the emotional health of Plaintiff and caused emotional distress. (Id.).

23.    The Eight Cause of Action is an action for common law

8

negligence. Id. at ¶ 71-73). Plaintiff alleges that Defendants acted negligent as they failed to perform their duties without the use of excessive force. (Id.).

24.   The first Ninth Cause of Action[1] is that the City is liable to the Plaintiff under a respondeat superior theory of liability. (Id. at ¶ 74).

25.   The second Ninth Cause of Action asserts that the City negligently trained, retained, and supervised the police officers. (Id. at ¶ 75-76).

26.   Although not very clear, the Tenth Cause of Action seems to allege race discrimination based on racial profiling in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff alleges that Plaintiff's African American race was a motivating factor in the Defendant Officers decision to use excessive force on Plaintiff in violation of his rights and to falsely arrest him. (Id. at ¶ 77-90).

27.   Plaintiff alleges that he is entitled to compensatory and consequential damages, economic losses, punitive damages, attorney's fees and costs, and pre and post judgment interest. (D.E. at p.15, ¶ 77-90).

---

[1] Plaintiff has two causes of actions that are both labeled "Ninth Cause of Action"

## LEGAL ARGUMENT

I.    LEGAL STANDARD.

A  12(b)(6)  motion  serves  an  important  role  in  the
litigation  process  in  that  it  "streamlines  litigation  by
dispensing with needless discovery and factfinding." Neitzke v.
Williams, 490 U.S. 319, 326-27 (1989). Bell Atlantic Corp. v.
Twombly, 550 U.S. 544 (2007), sets the standard for a motion to
dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009). "Under
the pleading regime established by Twombly and Iqbal, a court
reviewing the sufficiency of a complaint must take three steps."
Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016).

"First,  it  must  'tak[e]  note  of  the  elements  [the]
plaintiff must plead to state a claim.'" Id. (citations omitted)
(alterations  in  original).  "Second,  it  should  identify
allegations that, 'because they are no more than conclusions,
are not entitled to the assumption of truth.'" Id. (citations
omitted).  Stated differently, "the factual and legal elements
of a claim should be separated." Fowler v. UPMC Shadyside, 578
F.3d 203, 210 (3d Cir. 2009). Under the third prong, "'[w]hen
there are well-pleaded factual allegations, [the] court should
assume their veracity and then determine whether they plausibly
give rise to an entitlement to relief.'" Connelly, 809 F.3d at
787 (citations omitted) (alterations in original).

Alternatively, a court can "dismiss a claim on the basis of

10

a dispositive issue of law." Neitzke, 490 U.S. at 326.  "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." Id. at 327.

A complaint may be dismissed with prejudice where any proposed amendments would be futile and unable to make the claim plausible. See Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000) ("Among the reasons for denying leave to amend [is] futility. . . .  [F]utility of an amendment may only serve as a basis for denial of leave to amend when the proposed amendment is frivolous or advances a claim that is legally insufficient on its face.").

In the present matter, Plaintiff has failed to plead adequate facts to state a claim for relief against the City. The Complaint is impermissibly replete with legal conclusions which are couched as factual allegations. Plaintiff simply fails to state any cognizable civil rights claim upon which relief can be granted against the city. Accordingly, a dismissal of Plaintiff's Complaint is warranted.

## II.   THE NEW JERSEY POLICE DEPARTMENT IS NOT A PROPER PARTY TO THIS ACTION.

As an initial matter, the New Jersey Police Department is not a "person" subject to liability under Section 1983. A New Jersey police department is not an independent entity with the capacity to be sued, but only "an executive and enforcement function of municipal government." N.J.S.A. 40A:14-118.   As such, the proper defendant is the City not the police department. See Jackson v. City of Erie Police Dep't, 570 Fed. Appx. 112, 114 (3d Cir. 2014); Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997) (noting that municipality and its police department are treated as a single entity for purposes of Section 1983 liability). Accordingly, the Newark Police Department must be dismissed from this action.

## III.   PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983 CLAIM FOR EXCESSIVE FORCE AS POLICE DEFENDANTS ARE IMMUNE FROM LIABILITY AS THEIR CONDUCT DURING THE PURSUIT DID NOT SHOCK THE CONSCIENCE AND THEY WERE JUSTIFIED IN GIVING CHASE TO PREVENT PLAINTIFF FROM FLEEING.

As the Third Circuit explained in Davis v. Hillside, 190 F.3d 167, 170 (1999), liability under Section 1983 for a police pursuit is imposed only when the officer's conduct "shocks the conscience." The Davis Court (agreeing with the Ninth Circuit's reasoning in Onossian v. Block, 175 F.3d 1169, 1171 (1999)) also said that "[I]f a police officer is justified in giving chase, that justification insulates the officer from constitutional

attack, irrespective of who might be harmed or killed as a consequence of the chase." 190 F. 3d at 170, n. 2.

The U.S. Supreme Court has explained that police officers are entitled to maximum protection when it comes to police pursuit. "[H]igh speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment [and are not] redressible by an action under § 1983." County of Sacramento v. Lewis, 523 U.S. 833, 854 (1998). The only circumstance where there can be liability is when the police officer actually intends to cause harm ultra vires: "[I]n a high speed automobile chase aimed at apprehending a suspected offender . . . only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." Id. at 836.

The Lewis Court rejected a (relatively) less-demanding standard (such as deliberate indifference) because it reasoned that the decision whether to pursue a high-speed chase had to be made swiftly and required police to weigh competing concerns: "On one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders." Id.

13

at 853. Based on the conclusion that "the officer's instinct was to do his job as a law enforcement officer, not to induce [the motorcycle driver's] lawlessness, or to terrorize, cause harm, or kill," the Court found no substantive due process violation in Lewis. Id. at 855.

The lesson is that courts, in a constitutional analysis, should not "second guess a police officer's decision to initiate pursuit of a suspect so long as the officers were acting 'in the service of a legitimate governmental objective,'" such as "to apprehend one fleeing the police officer's legitimate investigation of suspicious behavior." Davis, 190 F.3d at 170 (3d Cir. 1999) (quoting Lewis, 523 U.S. at 846). In Davis, the plaintiff asserted that a police car chasing a suspect bumped the suspect's car, causing the suspect to hit his head and pass out, which caused the suspect's car to collide with other cars, one of which hit and injured the plaintiff (a bystander). Id. at 169. Finding no "evidence from which a jury could infer a purpose to cause harm unrelated to the legitimate object of the chase," the court affirmed the grant of summary judgment to the defendants. Id.

In the present case, Plaintiff seeks a remedy Section 1983 and avers that the officers' alleged use of excessive force violated Plaintiff's rights under the Fourth and Fourteenth Amendment in his First Cause of Action. Plaintiff does not deny

14

in his complaint that he failed to yield to the officers who were attempting to conduct an investigatory stop at the time. A pursuit ensued between Plaintiff and the unknown officers by vehicle. By Plaintiff's own admission, the police vehicle was a marked Newark Police Department vehicle. Thus, it follows, that he was aware that its occupants were Newark Police OfficerS. Despite this fact, Plaintiff did not stop running until he was allegedly struck by the vehicle. Any reasonable police officer under the circumstances would have considered Plaintiff's action to be suspicious. Accordingly, the Police Defendants were justified in giving chase. The facts as pled do not support the allegation that the offices engaged in conduct shocking to the conscience and necessary for a constitutional violation. Thus, immunity applies.

IV.  **PLAINTIFF FAILS TO PLEAD A CLAIM FOR REFUSAL TO PROVIDE MEDICAL CARE IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS, AS PLAINTIFF'S FACTS, AS PLEADED, DO NOT SUPPORT THE ALLEGATION THAT THE OFFICERS ACTED WITH DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS.**

When analyzing claims for denial of medical care asserted by arrestees or other pre-trial detainees, under Section 1983, the courts of this Circuit apply the holding of Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir.1995). Pierce v. Cherry Hill Tp. , 2013 WL 3283952, at *7 D.N.J., June 26, 2013). In Grosman the United States Court of Appeals for the Third Circuit

15

held that "[f]ailure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." Id. at 637 (3d Cir.1995) (citing Walmsley v. City of Phila., 872 F.2d 546, 551-52 (3d Cir.1989).

Here, Plaintiff claims in his Second Cause of action that the officers were aware that he was injured and did not take any action to provide or request medical care for Plaintiff, disregarding the obvious risk to Plaintiff's health. However, Plaintiff does not plead facts to support an allegation that the City or anyone on its behalf acted with deliberate indifference towards the Plaintiff in the alleged refusal to provide medical care. Accordingly, Plaintiff fails to plead facts to support an allegation that he suffered a constitutional violation resulting from a denial of medical care.

V.    **PLAINTIFF FAILS TO PLEAD A MONELL CLAIM AGAINST THE CITY, AS HE DOES NOT IDENTIFY THE POLICIES AND PRACTICES WHICH HE CLAIMS CAUSED HIS INJURIES OR CONSTITUTIONAL DEPRIVATION.**

It is well settled that "a municipality may be held liable in a § 1983 action only in limited circumstances." Monell v. Dep't of Social Serv., 436 U.S. 658, 688-689 (1978). In accordance with this rule, "a local government may not be held liable for constitutional violations solely upon the

basis of *respondeat superior,* municipal liability only arises when a constitutional deprivation results from an official custom or policy." Montgomery v. De Simone, 159 F.3d 120 (3d. Cir. 1998) citing Monell.  "

Consequently, no liability on the part of a municipality can be found merely on the basis of the employment relationship. Hopp v. City of Pittsburgh, 194 F.3d 434 (3d. Cir. 1999). Municipal liability under Section 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives. Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). The Court's reasoning in Monell has created a two-path track to municipal liability under § 1983, depending on whether the Beck v. City of Pittsburgh, 89 F.3d 966 (3d. Cir. 1996) allegation is based on municipal policy or custom. Id. at 971(When a suit against a municipality is based on §1983, the municipality can only be liable when the alleged [action] implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.").

The courts have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiffs injury. See Monell, 436 U.S. at 694.  As the court stated in Monell, "locating a 'policy' ensures that a municipality is held liable only for those

17

deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Monell, 436 U.S. at 694. Similarly, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Monell, 436 U.S. at 690-691 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-168 (1970)).

In order to demonstrate the existence of either a policy or custom, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Thus, policy is made when a decision-maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict.  Alternatively, a course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law. Beck at 971; see also, Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). A custom may also be established by evidence of knowledge of the misconduct and acquiescence in the continuing action. Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989).

18

As the Supreme Court has held, when a policy or custom is facially valid, a plaintiff must establish causation by demonstrating that the defendant's action "was taken with deliberate indifference as to its known or obvious consequences." Bd. of the County Comm'Rs v. Brown, 520 U.S. 397, 403 (1997). Merely, a "showing of simple or even heightened negligence will not suffice." Berg, 219 F.3d at 276 (quoting Brown, 520 U.S. at 407).    Plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered.  Bielevicz, 915 F.2d at 850. In order to do this, "plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." Id. at 851, citation omitted.

Here, Plaintiff asserts a Monell claim against the City in his Third Cause of Action. Plaintiff alleges that the City had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the Defendants caused damages and injuries to Plaintiff. Plaintiff also alleges that it was the policy and/or custom of the City of Newark to inadequately train, supervise, and discipline its officers.

In order to sustain a Section 1983 claim against the City, plaintiff must prove the existence of a policy or custom that has resulted in a constitutional violation. See also Berg v. County of Allegeheny, 219 F.3d. 261, 275 (3d Cir. 2000). Plaintiff

19

fails to plead sufficient factual matters to identify the policy, custom, or practice that proximately caused his injuries. The plaintiff has to do more than make a mere naked assertion that there is a policy/custom in the City of Newark. He must identify such policy/custom and provide sufficient facts to allow the Court to draw a reasonable inference that the policy/custom adopted by the City was the proximate cause of the plaintiff's constitutional rights being violated (injury). Plaintiff has simply failed to do this. He has not provided any specific facts in his complaint to support his allegations and has only made a general conclusory unsupported unadorned accusation in his complaint, which does not specifically point to any action or inaction by the City to adopt the alleged policies which led to the alleged violation of the plaintiff's rights.

### VI.   PLAINTIFF FAILS TO STATE A CLAIM FOR UNLAWFUL SEARCH AND SEIZURE/FALSE ARREST UNDER, 42 U.S.C. § 1983, AS THE OFFICERS HAD PROBABLE CAUSE FOR PLAINTIFF'S ARREST.

"To prove a claim for false arrest, a plaintiff must prove two elements: (1) that an arrest was made, and (2) that the arrest was made without probable cause." Stolinsky v. Pennypacker, 772 F. Supp. 2d 626, 645 (D.N.J. 2011) (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)).

In New Jersey, "probable cause ... is a well-grounded suspicion that a crime has been or is being committed. An arrest

20

was made with probable cause if "at the moment the arrest was made ... the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, (1964). The constitutional validity of an arrest does not depend on whether the suspect actually committed any crime. Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2003).

Probable cause does "not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972). Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction. Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). The kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest. Wilson v. Russo, 212 F.3d 781, 789 (3d Cir.2000) (holding that probable cause only requires a fair probability that a person committed the relevant crime).

In this matter, plaintiff asserts a claim for unlawful seizure/false arrest, under Section 1983 in the Fourth Cause of Action. Plaintiff alleges that he was arrested without probable cause. However, the facts as pled in the Complaint do not

21

support this cause of action, rather, it indicates that the Plaintiff failed to yield and eluded the police when they attempted to perform an investigatory stop, which gave rise to the pursuit and subsequent arrest. Any reasonable officers under the circumstances would have believed that the Plaintiff fled because a crime was being committed. Accordingly, there was probable cause to arrest Plaintiff.

VII. **PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY AS THE OFFICERS'S ACTIONS WERE OBJECTIONABLY REASONABLE UNDER THE CIRCUMSTANCES.**

Under the facts as pled, the City and the Unknown Defendant Officers are entitled to the protection of qualified immunity as to all the claims in Plaintiff's Amended Complaint. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). In particular, for qualified immunity to be applicable a "public employee either must demonstrate objective reasonableness or that he behaved with subjective good faith." Alston v. City of Camden, 168 N.J. 170, 186 (2001) (internal quotations and citations omitted); accord Southerland v. Pennsylvania, 389 F. App'x 166, 170 (3d Cir. 2010) ("[T]he constitutional question of the Saucier analysis focuses on whether there was a reasonable

mistake of fact, whereas the qualified immunity question addresses reasonable mistakes of law.").

Generally, qualified immunity protects public officials from suit, rather than merely providing them with a defense to liability. Gormley v. Wood-El, 218 N.J. 72, 113 (2014). With respect to fourth amendment excessive force cases specifically, "[q]ualified immunity protects officers from the 'hazy border' between excessive and acceptable force." Southerland, 389 F. App'x at 171. "Furthermore, 'in addition to the deference officers receive on the underlying constitutional claim' in excessive force cases, 'qualified immunity can apply in the event the mistaken belief was reasonable.'" Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004). Courts "have followed this doctrine in excessive force claims where the police shot a citizen." Id. As a result, qualified immunity can operate to bar claims under Section 1983 and the NJCRA. See Ramos v. Flowers, 429 N.J. Super. 13, 24 (App. Div. 2012) (finding that qualified immunity applies to the NJCRA and noting its applicability to Section 1983 claims).

Municipal police officers also enjoy immunity from the State-Law Claims under the New Jersey Tort Claims Act ("TCA"), N.J.S.A. §§ 59:1-1 to 12-3. Courts have consistently reinforced this principle that police officers should be immune for instant judgment calls in the face of extreme circumstances. Alston, 168

23

N.J. at 187-88 (applying the immunity to an officer pursuing a drug suspect on foot, emphasizing the "split-second judgments" such circumstances often require); Canico v. Hurtado, 144 N.J. 361, 365-66 (1996) (applying the immunity to an officer responding to a bank alarm, noting that such responses "often require split-second judgments"); Dunlea v. Twp. of Belleville, 349 N.J. Super. 506, 509 (App. Div.) (applying the immunity to officers responding to a burglary in progress), certif. denied, 174 N.J. 189 (2002).

"Under New Jersey law there is a presumption that a police officer acted with ordinary caution and in good faith in the performance of his duties." Amato v. U.S., 549 F. Supp. 863, 870 (1982). N.J.S.A. § 59:3-3 additionally provides that "[a] public employee is not liable if he [or she] acts in good faith in the execution or enforcement of any law."

Regardless of the claims qualified immunity is applied to, "[t]he court must make the ultimate determination on the availability of qualified immunity." Carswell, 381 F.3d at 242. "Qualified immunity is an objective question to be decided by the court as a matter of law." Id. The question should be determined as early as possible in the litigation. Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000). The issue should "be decided by a court, preferably on a properly supported

24

motion for . . . dismissal." <u>Gormley</u>, 218 N.J. at 113 (citation omitted).

The issue of qualified immunity may be resolved on this motion because "objective reasonableness is a question of law." <u>Curley v. Klem</u>, 499 F.3d 199, 210 (3d Cir. 2007). "'Only if the historical facts material to the [reasonableness] issue <u>are in dispute</u> . . . will there be an issue for the jury.'" <u>Id</u>. at 225 (citation omitted) (second alteration in original) (emphasis added).

For the reasons stated in the subsections above the officers acted in an objectively reasonable manner when they arrested Plaintiff, and are therefore entitled to qualified immunity.

VIII.   **PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS THE CITY IS NOT CAPABLE OF ENGAGING IN INTENTIONAL CONDUCT AND DID NOT VIOLATE ANY DUTY OWED TO PLAINTIFF.**

In order to establish a claim for intentional infliction of emotional distress, a plaintiff must establish: (1) intentional and outrageous conduct by the defendant; (2) proximate cause; and (3) severe distress. <u>Buckley v. Trenton Saving Fund Soc</u>., 111 N.J. 355, 544 A.2d 857, 863 (N.J.1988). The New Jersey Supreme Court has said that "the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it." <u>Buckley</u> 111 N.J. at 366. In <u>Buckley</u>, the

25

Court found that a plaintiff suffering from "aggravation, embarrassment, an unspecified number of headaches, and the loss of sleep" had not shown sufficient distress, as a matter of law, to rise to the necessary level of severity. Id.

In the present case, Plaintiff alleges that he suffered emotional distress as a result of Defendant's actions; however, Plaintiff does not identify the intentional extreme or outrageous conduct on behalf of officers. Moreover, the City is not capable of engaging in intentional conduct.

Similarly, Plaintiff fails to plead sufficient facts to support a claim for negligent infliction of emotional distress as it did not violate a duty owed to Plaintiff.

IX. **WITH RESPECT TO ALL OF PLAINTIFF'S TORT CLAIMS (ASSAULT AND BATTERY AND NEGLIGENCE), THE TORT CLAIMS ACT ABSOLUTELY IMMUNIZES THE CITY IN THIS MATTER PURSUANT TO N.J.S.A. 59:5-2(B) AND (C); BECAUSE THERE WAS NO WILLFUL MISCONDUCT.**

It is important to understand that this is not a negligence case. This is a pursuit case governed by the Tort Claims Act ("Act"). Pursuant to N.J.S.A. § 59:5-2(b)(1)-(3), (c), "[n]either a public entity nor a public employee is liable for . . . . any injury caused by (1) an escaping or escaped prisoner; (2) an escaping or escaped person; (3) a person resisting arrest or evading arrest; [or (4)] any injury resulting from or caused by a law enforcement officer's pursuit of a person." The purpose of this provision is to "immunize public entities and employees

26

from the entire spectrum of potential injuries caused by persons actually or about to be deprived of their freedom who take physical measures of one kind or another to avoid the constraint or to escape from it." Tice v. Cramer, 254 N.J. Super. 641, 651 (App. Div. 1992), aff'd 133 N.J. 347, 362 (1993).  This immunity is "absolute except in the event of willful misconduct on the part of a public employee."  Alston v. City of Camden, 168 N.J. 170, 183 (2001) (noting that violation of a standing order or command can constitute willful misconduct).

"This section deals with correction and police activities and provides broad immunity for injuries caused by . . . persons not yet prisoners and who are resisting arrest or escaping." Id. at 652 (emphasis in original).  "The immunity relieves the officer (and the public entity—the immunity applies to both) of whatever liability would otherwise attach for the officer's negligent conduct. . . ." Tice, 133 N.J. at 363. "If that is not its effect, then there is no point whatsoever to the immunity." Id. Thus, this section is interpreted broadly, and immunity protects public entities and officers even when during the pursuit, the officer shoots an individual with his firearm. See Alston, 168 N.J. at 178.

In the seminal case of Tice, the police had been called to investigate a melee at a tavern. As an officer approached the tavern he noticed a car with its lights out pull into the road

27

from a parking lot across the street. He testified that someone in the car threw a hammer at him. He gave chase, pursuing the car through four stop signs until it crashed into a pickup truck. Id. at 351-352. Because the issue before the Court was the defendant's motion for summary judgment, the Court explained that it did not matter that a jury might have laid much of the fault for the accident on the police officer, the officer enjoyed absolute immunity absent willful misconduct, for injuries resulting from the chase even though the injury would not have occurred but for his negligence. Id. at 351, 366-67.

In Alston, the Court confirmed the "expansive approach" in the application of the pursuit immunity. 168 N.J. at 182. The Alston Court specifically "rejected . . . formulistic distinction[s]" that could weaken the pursuit immunity. Id.

The Legislature has recognized the danger of pursuits but has decided that the public good of such pursuits outweighs the potential injuries that can result. See, Tice, 133 N.J. at 381, recognizing that "A difficult policy question involved in this legislative choice between aggressive law enforcement and the numerous injuries alleged to be unjustified continues to rage."

As noted, the only exception to the statutory pursuit immunity is willful misconduct. Willful misconduct "is not immutably defined but takes its meaning from the context and purpose of its use." Fielder v. Stonack, 141 N.J. 101, 124

28

(1995). For purposes of the Act, willful misconduct has been defined "much more than negligence. It is the commission of a forbidden act with actual knowledge that the act is forbidden." Kollar v. Lozier, 286 N.J. Super. 462, 470 (App. Div. 1996), certif. denied, 145 N.J. 373 (1996).

The New Jersey Supreme Court defined what constitutes "willful misconduct" in a police pursuit context:

> [W]illful misconduct is ordinarily limited to a knowing violation of a specific command by a superior, or a standing order, that would subject the officer to discipline . . .
> More particularly, willful misconduct in a police vehicular chase has two elements: (1) disobeying either a specific lawful command of a superior or a specific lawful standing order and (2) knowing of the command or standing order, knowing that it is being violated and, intending to violate it.
> Fielder v. Stonack, 141 N.J. 101, 125-26 (1995).

After Fielder, the Appellate Division further explained that a police officer may deviate from a directive without his or her actions amounting to willful misconduct so long as the officer was not subjectively aware of the procedure and did not intentionally violate it. Kollar v. Lozier, 286 N.J. Super. at 472 ("Without a knowing violation of an unequivocal order there can be no willful misconduct."), certif. denied, 145 N.J. 373 (1996).

In this case, Plaintiff asserts an assault and battery claim and a negligence claim against the City and Unknown Defendant Officers. The officers engaged in a pursuit of a

29

person evading arrest. The claims for assault and battery must fail because there is no indication that the officers involved in the pursuit engaged in willful misconduct. Even if Plaintiff could demonstrate negligence, that is not enough to subject the City or the unknown Defendants to liability. Plaintiff must prove willful misconduct and Plaintiff fails to set forth facts indicating that the officers engaged in willful misconduct or that they knew that they were acting contrary to any standing order or lawful command and intended to act in violation. Accordingly, Plaintiff's common law claims must be dismissed

X.   **PLAINTIFF FAILS TO STATE A CLAIM FOR RESPONDEAT SUPERIOR/SUPERVISORY LIABILITY AGAISNT THE CITY AS THERE WAS NO CONSTITUTIONAL VIOLATION.**

"Supervisory liability [under Section 1983] cannot be based solely upon the doctrine of respondeat superior, but there must be affirmative conduct by the supervisor that played a role in the [wrongful conduct.]" Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir.1990) (citing Rizzo v. Goode, 423 U.S. 362, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence ... must be made with appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Here, in the first Ninth Cause of Action of Plaintiff's

amended complaint, Plaintiff alleges that the City is vicariously liable for the Unknown Defendant Officers' conduct via the principle of respondeat superior, since the conduct of the officers occurred while they were on duty and in uniform and during the scope of their duties as police officers.

Plaintiff's bare and conclusory allegations alone should not suffice to fasten liability on the City for any alleged violation of Plaintiff's rights. City of Canton v. Harris, 489 U.S. 378, 379 (1988). There is no indication or allegation on the face of the complaint that any one on behalf of the City personally directed any officer to take any action in this matter. A defendant's supervisory position does not, standing alone, establish liability. DeBellis v. Kulp, 166 F. Supp. 2d 255, 277 (E.D. Pa. 2001). Plaintiff has not pled sufficient facts to support the allegation that the City knew of the alleged wrongdoing and acquiesced. Moreover, there was no violation of Plaintiff's rights, in the first place, so there cannot be any supervisory liability. Plaintiff's mere assertion that supervisory liability applies, without more, is insufficient and must be dismissed.

XI.   **PLAINTIFF'S CLAIM SHOULD BE DISMISSED AS PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT TRAINING, RETENTION, AND SUPERVISION BECAUSE PLAINTIFF FAILS TO IDENTIFY ANY DEFICIENCIES IN THE CITY'S TRAINING, RETENTION, AND SUPERVISION OF ITS OFFICERS.**

Plaintiff fails to sufficiently allege how the City was deficient in training or supervising its employees only based on policy or custom.    An allegation that the municipality maintained a policy or custom of inadequate supervision or training without more is merely a legal conclusion couched as a factual allegation that the court is not bound to accept. Kingsmill v. Szewczak, 117 F. Supp.3d 657 (E.D. Pa. 2015) (citing Twombly, 550 U.S. at 555).

The Supreme Court has made it clear that a municipality may be held liable for constitutional violations arising from its failure to train employees.    Canton v. Harris, 489 U.S. 378(1988).   In Canton, the Supreme Court held that the first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.

Further, the inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. Id. at 388. Also, for liability to attach, the identified deficiency in a city's

32

training program must be closely related to the ultimate injury. Id. at 390; see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1030 (3d Cir. 1991)(holding that when alleging that a municipality's training or supervision was insufficient, the Plaintiff must identify the precise deficiency in training or supervision that has some nexus with his injury). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality – a "policy" as defined by prior cases — can a city be liable for such failure under Section 1983. Id. at 389.

In limited circumstances, § 1983 municipal liability may be based on deficiencies in hiring and retention. In Board of County Commissioner v. Brown, 520 U.S. 397, 412 (1997), the Supreme Court held that municipal liability can be based upon a municipality's deliberately indifferent hiring of a constitutional wrongdoer, but only if the plaintiff demonstrates that the hired officer "was highly likely to inflict the particular injury suffered by the plaintiff." The Court also acknowledged that the fault and causation standards for inadequate hiring claims are even more stringent than for inadequate training claims. Id. at 413. To avoid "municipal liability for a hiring decision from collapsing into respondeant superior liability, a court must carefully test the link between the policy maker's inadequate decision and the particular injury alleged." Id. at 410.

33

As the Court stated in <u>Brown</u>, "'deliberate indifference'" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Id</u>. at 410. The Supreme Court reiterated the heightened scrutiny of this standard, noting in the context of an inadequate background screening case that a § 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 117 S.Ct. 1382, 1388(1997) (emphasis in original). When a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee. <u>Id</u>.

Here, Plaintiff alleges that the City negligently trained, retained, and supervised Defendant police officers. However, Plaintiff failed to adequately identify any shortcomings in the City's training programs or supervision of its officers or any specific training that the City should have offered these officers which would have prevented them from acting in the manner they acted given the circumstances. <u>Reitz v. City of Bucks</u>, 125 F.3d 139, 144 (3rd Cir. 1997). Plaintiff's conclusory

allegations, without more, are insufficient to withstand a dismissal.

### XII. PLAINTIFF FAILS TO STATE A CLAIM FOR RACE DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AS PLAINTIFF FAILS TO PLEAD FACTS TO SUPPORT THE ALLEGATION THAT THE OFFICER'S ACTIONS WERE MOTIVATED BY PLAINTIFF'S RACE.

The facts, as pleaded, are equally insufficient to make Plaintiff's claims of racial discrimination based on racial profiling.

> [A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in Iqbal, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Connelly v. Lane Const. Corp., 809 F.3d 780, 786 (3d Cir. 2016). "A complaint that pleads facts merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." Id. (citations omitted) (internal quotation marks omitted) (alterations in original).

For example, in Iqbal, the complaint had not "'nudged [plaintiff's] claims' of invidious discrimination 'across the line from conceivable to plausible.'" Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (citations omitted). There were well-pleaded allegations the FBI and "Defendant MUELLER, arrested and detained thousands of Arab Muslim men." Id. (citations omitted) (internal quotation marks omitted). Also alleged was that "[t]he policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER." Id. (citations omitted) (internal quotation marks omitted).

The Supreme Court held, "[t]aken as true, these allegations are consistent with petitioners purposefully designating detainees 'of high interest' because of their race, religion, or national origin. But given more likely explanations, they do not plausibly establish this purpose." Id. (citations omitted) (internal quotation marks omitted) (emphasis added); accord Argueta v. U.S. Immigration & Customs Enf't, 643 F.3d 60, 73 (3d Cir. 2011).

While the Supreme Court acknowledged that "parallel conduct was consistent" with discrimination, the plaintiff's detainment was "likely lawful and justified by his nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed

36

terrorist acts." Iqbal, 556 U.S. at 681, 682 (citations omitted) (emphasis added). Stated differently, it was more likely that the government defendants had not acted for a discriminatory purpose because the legitimate reason proffered for their conduct was not contradicted by the remaining allegations of the complaint. See id.

Similarly here, Plaintiff alleges that Plaintiff's African American race was a motivating factor in the Defendant Officers decision to use excessive force on Plaintiff and to falsely arrest him in violation of 14th Amendment Equal Protection Clause. There are no other allegations of any kind that tend to show or support a finding of malice.

To make an equal protection claim in the profiling context, Plaintiff is required to prove that the actions of the individual officers (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose. Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (race discrimination); Chavez v. Illinois State Police, 251 F.3d 612, 635-36 (7th Cir.2001) (racial profiling). Plaintiff's complaint is bereft of facts to support this cause of action. In order to prove a discriminatory effect, Plaintiff has to show that he is a member of a protected class and that he was treated differently from similarly situated individuals in an unprotected class. Chavez, 251 F.3d

at 636. A discriminatory effect may be proven by naming similarly situated members of an unprotected class who were not selected for the same search or, in some cases, by submitting statistical evidence of bias. <u>Chavez</u>, 251 F.3d at 636.

The facts as pleaded do not form the basis of a claim under Section 1983 for race discrimination, and, therefore, Plaintiff's Complaint should be dismissed.

XIII. **PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES MUST BE DISMISSED BECAUSE THE CITY AND THE UNKNOWN DEFENDANT OFFICERS, IN THEIR OFFICIAL CAPACITY, CANNOT BE LIABLE FOR PUNITIVE DAMAGES.**

To the extent that Plaintiff seeks punitive damages against the City, Plaintiff's claim is barred under federal law and under state law by the Tort Claims Act. The Supreme Court, in <u>City of Newport v. Fact Concerts, Inc</u>., 453 U.S. 247, 271 (1981), held that "a municipality is immune from punitive damages under 42 <u>U.S.C</u>. § 1983."

Similarly, the Tort Claims Act specifically bars Plaintiff from seeking punitive damages against the City. It states that "no punitive or exemplary damages shall be awarded against a public entity." <u>N.J.S.A.</u> 59:9-2(c); <u>see also</u>, <u>Mantz v. Chain</u>, 239 F. Supp. 2d 486, 508 (D.N.J. 2002)(holding that the Tort Claims Act barred plaintiffs claim for punitive damages against public entities for assault and battery by state troopers);

Ramirez v. United States, 998 F. Supp. 425, 438 (D.N.J. 1998)(barring claim for punitive damages against public entities for alleged negligence, false imprisonment, and false arrest by INS agents).

Punitive damages are also not available under Section 1983 against officials in their official capacity. Leipziger v. Township of Falls, No. CIV.A. 00-1147, 2001 WL 111611, at *9 (E.D.Pa. Feb. 1, 2001).

Accordingly, Plaintiff fails to state a claim for which relief can be granted for punitive damages against the City and the Unknown Defendant Offices in their official capacity.

XIV. **PLAINTIFF'S CLAIM FOR PRE-JUDGMENT INTEREST IS BARRED UNDER THE TORT CLAIMS ACT N.J.S.A. 59:9-2 (a).**

Pursuant to N.J.S.A. 59:9-2 (a) "No interest shall accrue prior to the entry of judgment against a public entity or public employee." Dorn v. Transport of New Jersey, 200 N.J. Super. 169 (App. Div. 1984).

In the present matter, Plaintiff is seeking pre and post-judgment interest against Defendant, however, the City is immune from pre-judgment interest under the Tort Claims Act. Accordingly, Plaintiff's claims for pre-judgment interest must be dismissed.

39

**XV.  PLAINTIFF'S ALLEGATIONS OF FALSE ARREST ARE TIME-BARRED AND SHOULD BE DISMISSED.**

Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued. O'Connor v. City of Newark, 440 F.3d 125, 126 (3d Cir. 2006). In New Jersey, 42 U.S.C. § 1983 actions must be brought "within two years of the accrual of the cause of action." Id. at 126-127. Therefore a Section 1983 claim will be time-barred if more than two years have passed since its accrual. Vickers v. Childs, 530 F. App'x 104, 105 (3d Cir. 2013). The limitations period in a § 1983 action "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Williams v. Trenton Police Dept., 591 Fed. App'x 56, 58 (3d Cir. 2015)(quoting Genty v. Res. Trust. Corp., 937 F.2d 899, 919 (3d Cir. 1991)). The Statute of Limitations on a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time that claimant becomes detained pursuant to the legal process. Wallace v. Kato, 549 U.S. 384, 398 (2007); Williams, 591 Fed. App'x at 58.

Here, Plaintiff's claim that he was the victim of a false arrest violates the statutes of limitations. His purported false arrest occurred on May 6, 2014 but his initial complaint, filed

40

on May 2, 2016 does not mention his arresting officers and only names City of Newark New Jersey Police Officers John Does 1-50. Plaintiff has not made efforts to identify the arresting officers. The two years deadline has already expired. Defendant City of Newark served Rule 26 Disclosures on January 26, 2017 wherein it specifically identified Plaintiff's arresting officers and of all officers involved in the incident. Plaintiff filed an Amended Complaint on May 1, 2017 where he again names John Does 1-10 and fails to specifically name any officers despite knowing the identity of all the officers involved. Because Plaintiff's Amended Complaint and attempts at learning his arresting officers' names fall short of the statute of limitations, Plaintiff's claim for unreasonable seizure/false arrest is time-barred.

**XVI. NEW JERSEY FICTITIOUS PARTY RULES BAR PLAINTIFF'S CLAIM FOR FALSE ARREST BECAUSE PLAINTIF FAILED TO EXERCISE DUE DILIGENCE IN LEARNING THE INDENTITY OF HIS ARRESTING OFFICERS BEFORE THE EXPIRATION OF THE STATUTE OF LIMITATIONS.**

New Jersey Court Rule 4:26-4 states that "In any action…if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification. Plaintiff shall on motion, prior to judgment, amend the complaint to state defendant's true name." R. 4:26-4. "Where a defendant is sued in a fictitious

41

name because of the plaintiff's inability to ascertain his identity despite diligent efforts, the complaint may be amended after the statute of limitations has run to substitute the defendant's true name and effect service on him." Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111 (1973).

The fictitious party rule suspends the running of the statute of limitations when a plaintiff does not know the true identity of a defendant. Viviano v. CBS, Inc., 101 N.J. 538, 547 (1986). The rule stems from the courts' "attempt to balance the defendant's interest in repose with the plaintiff's interest in a just determination of his or her claim. The need to submit claims promptly to judicial management must be tempered by the policy favoring the resolution of claims on their merits." Id. at 547. As the Supreme Court stated:

> Where . . . the plaintiff does not know or have reason to know that he has a cause of action against an identifiable defendant until after the normal period of limitations has expired, the considerations of individual justice and the considerations of repose are in conflict and other factors may fairly be brought into play. Farrell, 62 N.J. at 115.

There are several elements to consider as part of fictitious party practice. The first prerequisite to a fictitious name designation in a pleading is that the true identity of the defendant be unknown to the plaintiff. Marion v. Borough of Manasquan, 231 N.J. Super. 320 (App. Div. 1989). For example, in Washington v. Systems Maintenance Corp., 260 N.J.

42

Super. 505, 507 (Law Div. 1992), the plaintiff was injured in December 1986, when a bag of laundry fell onto the plaintiff from an overhead laundry conveyance system. In November 1988, the plaintiff filed a complaint naming a John Doe corporation who allegedly designed, manufactured, and/or sold the laundry system. Id. at 508. Plaintiff then amended the complaint in April 1992, naming Polymark as a defendant. Id. The Washington court determined that the plaintiff could not take advantage of the fictitious party rule because he had known the identity of Polymark since the installation of the laundry system. Id. at 515-16. The court noted that the plaintiff also had prior contact with Polymark's personnel and had actually named Polymark as the manufacturer of the laundry system in his deposition. Id. at 516. The court in Washington concluded that "the identity of the fictitious defendant was quite easily discoverable or already known" to the plaintiff prior to the plaintiff filing his original complaint. Id.

Second, even if a plaintiff does not know the identity of a defendant, he or she will still be precluded from using R. 4:26-4, if, through the use of diligence, he or she should have known the defendant's identity prior to running of the statute of limitations. See Cardona v. Data Sys. Computer Centre, 261 N.J. Super. 232, 235 (App. Div. 1992). After filing a complaint which includes a fictitious defendant, plaintiffs are required to

43

proceed diligently to amend the complaint without prejudice to the defendant to be joined. <u>Stegmeier v. St. Elizabeth Hospital</u>, 239 N.J. Super. 475 (App. Div. 1990). For the Rule to operate "a specific claim must be filed against a described, though unnamed party within the Statute of Limitations and Plaintiff must diligently seek to identify the fictitiously-named defendant." <u>Greczyn v. Colgate-Palmolive</u>, 183 N.J. 5, 11 (2005). Thus, the Rule will not protect a plaintiff who had ample time to discover the unknown defendant's identity before the running of the statute of limitations. <u>Matynska v. Fried</u>, 175 N.J. 51, 53 (2002). Indeed "where a plaintiff knows <u>or has reason to know</u> that he has a cause of action against an identifiable defendant and voluntarily sleeps on his rights so as to permit the customary period of limitations to expire, the pertinent considerations of individual justice as well as the broader considerations of repose coincide to bar his action." <u>Id</u>. at 115.

In <u>Cardona</u>, the plaintiff was involved in a motor vehicle accident in July 1986. 261 N.J. Super. at 235. In July 1988, the plaintiff filed suit, naming John Doe as the driver of another vehicle involved in the accident. <u>Id</u>. In June 1991, the plaintiff filed an amended complaint, naming Eileen and Israel Vizcaino, as the driver and the owner, respectively, of one of the other vehicles in the accident. <u>Id</u>. at 233-34. The Vizcainos

44

subsequently moved to dismiss the complaint on the ground that it was barred by the statute of limitations. Id. at 234.

The trial court's dismissal was affirmed by the Appellate Division, which ruled that the plaintiff could have known through the use of diligence the Vizcainos' identity prior to filing the complaint. Id. at 234-35. The police had made a report of plaintiff's accident which revealed the names and addresses of all parties involved, but the plaintiff and his attorney failed to acquire the report. Id. at 235. Plaintiff's failure to make that simple inquiry constituted a lack of diligence and foreclosed plaintiff from invoking R. 4:26-4. Id. See also Younger v. Kracke, 236 N.J. Super. 595, 601 (Law Div. 1989).

Here, Plaintiff had ample time to discover the identities of his arresting officers through the exercise of due diligence. However, Plaintiff did not even make a minimal effort to do so. In fact, Defendant provided the name of Plaintiff's arresting officers and of all the officers involved on January 6, 2017. Despite having this information Plaintiff failed to name any individual defendants in his Amended Complaint filed on May 1, 2017.

The Rule does not allow plaintiffs to add defendants to lawsuits at leisure. The Rule requires due diligence. Because Plaintiff cannot demonstrate due diligence in learning the names

of the officers he claims violated his rights, such claims are time barred.


## CONCLUSION

For all of the foregoing reasons, the City respectfully requests that this Court enter an Order granting Defendants' motion and dismissing Plaintiff's Complaint as to all claims against Defendants Newark Police Department and the City of Newark.


                          KENYATTA K. STERWART
                          CORPORATION COUNSEL
                          CITY OF NEWARK
                          Attorneys for Defendant City of Newark


                          By:/s/  EMILIA PEREZ
                               Emilia Perez

Dated:   June 5, 2017

46